## WILLIS WILSON v. THE STATE.

*No. 793. Decided April 22nd, 1896.*

*First Motion for Rehearing Decided January 13th, 1897.*

*Second Motion for Rehearing·Decided March 3rd, 1897.*

**1. District Court—Failure to Meet on Day Fixed by Law—Effect.**

The District Court met according to the old law, on the 24th of June, 1895, and adjourned on the 2nd of July, 1895. Appellant was tried and convicted on the 27th of June, 1895. But the law under which the term began and was held, had been superseded and repealed by an act which took effect the 1st of April, 1895, and under which the District Court for the county should have convened on the 3rd instead of the 24th of June, 1895. Held: The court not having convened when authorized by law, it could not convene and hold a term at a subsequent day; and notwithstanding the conviction was, in fact, had upon a day when the court could have been legally in session under the last act, still because the conviction was had at a term of court not authorized by law, the same was illegal and invalid. But, see, post paragraph 2.

### ON FIRST MOTION FOR REHEARING.

**2. District Court—Two Terms a Year—Constitutional Law.**

Sec. 7, Art. 5, of the Constitution, requires, that the District Judge "shall hold the regular terms of court at one place in each county in the district twice in each year, in such manner as may be prescribed by law." Held: That where a legislative act, if given immediate effect as provided by the act, would deprive a county of its constitutional two terms during the year, the new law, so changing the holding of courts, would be postponed and not given effect until such time as the constitutional two terms during the year could be held; and, pending the time when such new act should take effect, the old law, already in existence, would have effect and regulate the terms of holding court in said judicial district. Held, further: That inasmuch as the Act of 1895, changing the time for holding the courts in the Forty-sixth Judicial District, if given immediate effect would have deprived one of the counties of the district of one of its two terms during the year 1895, the old law of 1892 remained

in force and legally regulated the times for the holding of the terms in said district until the Act of 1895 could be made constitutionally operative in all the counties.

### 3. Recalling a Witness.

Where there is a disagreement between counsel for the State and the defendant as to the testimony of a certain witness, the right to have the witness recalled is limited by statute to a request from the jury, and it is not error to refuse to recall him upon request of counsel.

### 4. Theft of Cattle—General and Special Owner—Want of Consent.

On a trial for theft of cattle, which are in the exclusive care, control and management of the special owner, it is not necessary for the State to prove the want of consent to the taking of the real or general owner. When the general owner is a nonresident, or one who is not exercising care, management or control over the cattle, if defendant has his consent, it is for him to prove it.

### 5. Same—Identification of Animal.

On a trial for theft of cattle, the animal is reasonably identified by a witness by its flesh-marks and general appearance, as the same he knew as a certain heifer which ran with his father's cattle.

ON SECOND MOTION FOR REHEARING.

### 6. Impeachment of a Witness—Charge, Limiting and Restricting, Necessary When.

It is a general rule, that whenever extraneous matter is admitted in evidence for a specific purpose, incidental to, but, which is not admissible to prove the main issue, and which might tend, if not explained, to exercise a strong, undue or improper influence upon the jury as to the main issue injurious and prejudicial to the right of the party, then it becomes the imperative duty of the court, in its charge, to so limit and restrict it, as that such unwarranted results cannot ensue; and the failure to do so will be radical and reversible error, even though the charge be not excepted to. Such a charge is required whenever there is danger of convicting defendant for some offense proved other than that charged in the indictment, and, whenever evidence, for the purpose of impeaching a witness, is introduced, which is calculated to be unduly used by the jury for some other purpose than as impeachment testimony. But, where it is apparent that the testimony can be used for no other purpose than that of impeachment, it is not necessary for the court to limit the purpose of the same in its charge.

### 7. Same.

On a trial for cattle theft, where the defense was, that the animal seen in defendant's possession was not the property of the prosecutor, but one he had purchased from his brother; and, in support of this defense, he relied upon the testimony of his brother and himself, and his brother was directly impeached by proof of contradictory statements he had made, to the effect, that he had not sold the animal to his brother. Held: It was of vital importance that the court should have limited, in the charge, the impeaching testimony to its proper purpose.

APPEAL from the District Court of Foard. Tried below before Hon. G. W. Brown.

Appeal from a conviction for cattle theft; penalty, two years' imprisonment in the penitentiary.

The stolen animal was alleged to be the property of Tebe Hart. The trial was had at a term of the District Court, in Foard County, which was begun on the 24th of June, 1895, and adjourned the 2nd of July, 1895, after a session of nine days. The judgment of conviction was rendered against defendant on the 27th of June, 1895. Under the Act of June 1st, 1892, which prescribed the times for the holding terms of the District Court in the Forty-sixth Judicial District, it was provided: "In

the county of Foard on the twentieth Monday after the first Mondays in February and August, and may continue in session until the business is disposed of." At the time this court convened, the act approved April 1, 1895, had gone into operation, under an emergency clause, and said act changed the times for the holding the terms of the court in the Forty-sixth Judicial District, the time for holding the court in Foard County being changed to the seventeenth, instead of the twentieth, Mondays after the first Mondays in February and August. Under this latter law, the seventeenth Monday after the first Monday in February falling on the 3rd day of June, 1895, the District Court of Foard should have convened on the 3rd, instead of the 24th of June, 1895. And it was insisted, therefore, by appellant, that the proceedings and conviction were null and void because had at a term of court not authorized by law.

This is the only question passed upon in the first opinion below. After this first opinion, reversing and remanding the cause, was handed down, the Assistant Attorney-General filed the following motion for re-hearing in behalf of the State.

"Now comes the State by attorney, and moves the court to set aside its judgment of reversal rendered herein, and grant it a rehearing. Because the court erred in holding that term of court at which appellant was tried was not a legal lerm, in this, said term was properly held under the old law, that is, the Act of 1892, because the day the Act of 1895 (April 1, 1895) took effect was the day that District Court should have convened in Greer County, under the provisions of the Act of 1892. Whereas the Act of 1895 fixed a time for holding the spring term of the Greer County District Court at a date already past, that is, on the sixth Monday after the first Monday in February (Act 1895, p. 34). It is therefore apparent that if it be held that the Act of 1895 should govern, that Greer County would have been deprived of one of its two terms of court allowed by the Constitution. In such case the new law should not be held effective until after the expiration of ninety days after its passage. This construction would allow the respective counties in the Forty-sixth Judicial District two terms of District Court for the year 1895. Ex parte Murphy, 27 Tex. Crim. App., 492. To hold otherwise would be to deprive some of the counties of two terms of District Court for the year 1895. Wherefore the State prays that the judgment of reversal be set aside, and that it be granted a rehearing herein."

This motion was sustained, a rehearing granted, and the judgment was affirmed. After the second opinion, affirming the judgment, was handed down, the appellant filed a motion for rehearing, as follows:

"Now comes Willis Wilson, appellant in the above entitled cause, and moves the court to grant him a rehearing in said cause, and reverse and remand the same for the following reasons, to-wit:

"The Court of Criminal Appeals erred in failing to reverse and remand this cause on the grounds set out in the appellant's proposition under his fifth assignment of error, the same being in words and figures as follows:

" 'The evidence of John Gamble and W. T. Dunn was only admissible to discredit the witness, Alex. Wilson, but by reason of the fact that such evidence tended to show defendant's guilt, the failure of the trial court to instruct the jury that such evidence could only be considered for the purpose of discrediting said Alex. Wilson is such error as requires a reversal of the case.'

"Wherefore appellant prays judgment that a rehearing be granted and the cause reversed and remanded."

The evidence adduced at the trial was, in substance, as follows: Tebe Hart, the alleged owner, testified for the State that he had the care, control and management of J. S. Woods' cattle in Foard County; his brand, J S W on the side, and I on the hip and thigh, and the brand known as the lightning brand. Hart said that a two-year old, past, red heifer ran in Cope's pasture. It ran about there for about two years or over. That he saw it near said place in the summer of 1894, and had seen it there once or twice before that. That he had not given the defendant or anyone else his consent to take said heifer. That if he had lost any cattle he did not know it. That he did not know whether said heifer was still in Cope's pasture or not. That he did not know whether she was in the straight mark or not, as a good many of the J S W cattle were marked wrong.

Mrs. R. H. Dickerson testified that she and her husband moved to the J. W. Cope place about a week before December 24, 1894. There was a red heifer, two years old, past, running on the place. It came up with their cows every night and they turned it out with their cattle on the morning of December 24, 1894. It went away with their cattle and she has not seen it since. That defendant came to her house that morning at at 8 o'clock and inquired for her husband who was then at Quanah.

The record of marks and brands introduced by the State showed J. S. Wood's brand to be J S W on left side and I on hip and thigh, and the mark a swallow fork and underbit in left ear and underbit in the right.

Dickerson, son of Mrs. R. H. Dickerson, testified that on December 24, 1894, at about 10 o'clock, a. m., he met defendant about half a mile north of his mother's house, driving a red yearling. That defendant came to witness and asked him if he had a horse that he (witness) could help him drive a cow, and witness told him that he had nothing but his mules and wagon. The heifer was a red two-year-old, past, and looked exactly like the one running in the pasture, but witness did not see the mark or brand and would not say it was the same heifer.

R. H. Dickerson, for the State, testified that he got home from Quanah about 2 or 3 o'clock on December 24, 1894, and went to look for his cattle which were scattered. He did not find the red heifer, but he did find the entrails of a beef in defendant's pasture about a mile and a half from witness' house and half a mile from defendant's house. The beef had been recently slaughtered about 150 yards from the road in quite

a thick brushy place. He saw wagon tracks that came and went towards defendant's house. The next day witness went to Quanah and saw defendant on the road with something in a wagon covered with a wagon sheet. About six days after December 24th, witness was again at the place where he saw the entrails. J. W. Cope and John Jamison were with him and they then saw the head and feet about ten yards from the entrails in a low place in the ravine. The animal appeared to have been gnawed by dogs or wolves. One horn was off and the other appeared to be gnawed. The head and hoofs were of the same color as the lost heifer. John Jamison went with Cope and Dickerson to where the entrails were, and found entrails, head, feet, left ear and two pieces of hide about two or three inches across. Witness would call the mark on the left ear found a crop and underbit. The crop was not straight cut, being cut deeper in the middle (the ear and two pieces of hide thus found were here identified by the witness and exhibited to the jury). It is not uncommon for the knife to slip in marking and make a different mark from the one intended.

John Cope, sheriff of Foard County, testified that about two years ago he rented his farm to R. H. Dickerson and moved to Crowell. The red yearling described by the witness was then running on the place. It came there when a small calf. He went with Jamison and Dickerson and found the entrails, etc., on December 27, 1894. He gave the ear and pieces of hide, exhibited to the jury, to the District Clerk and the defendant had not seen them and was not aware he had them. The heifer left on the place was a deep red, and the head, ear, etc., looked like those of said heifer.

John Gamble testified that on December 23, 1894, defendant agreed to deliver him half a beef, and he did deliver him half of what appeared to be a two-year-old heifer on the evening of December 24.

Tebe Hart, for defendant, testified that he was and had been engaged in cattle business and was experienced in marks and brands. The ear exhibited to the jury was a left ear and its mark looked to be a kind of a crop and underbit. He examined the full hide exhibited without the ears, and compared the ear and two pieces of hide with it, and they were exactly alike in color.

W. T. Dunn testified as did Hart to the mark in the ear, and further that the full hide exhibited was in Alex Wilson's brand. The ear and two pieces of hide exhibited correspond exactly with the full hide in color and appearance.

Tom Latham, Ernest Williams and Tom Renson examined the mark on the ear exhibited and said it was a crop and underbit, and did not appear to have been changed.

J. P. Carmack, District Clerk, identified the ear and two pieces of hide exhibited as those given him by the sheriff in December, 1894. Defendant did not know witness had them so far as he knew.

Alex Wilson, brother of defendant, testified that on the morning of December 24, 1894, he sold to defendant for beef a red two-year-old

heifer branded X and $\overline{\wedge\tau}$ on left side and marked crop and underbit in left ear and crop and under half crop the right. He stayed all night with defendant December 23, and sold him heifer next morning and told him where she ran. He returned about one or two o'clock, and found defendant skinning the heifer witness sold him at the place described by Dickerson. He helped defendant finish dressing the beef and load it in his wagon. Witness showed Dunn and other witnesses the hide taken off the heifer he sold his brother, and it was the one testified about by them. On cross-examination he said that he did not testify before the grand jury at last term of court that he had not sold defendant any cattle. That he was not asked that question. Defendant in his own behalf testified that he purchased the cow killed by him from his brother, and detailed all of the circumstances.

John Gamble and W. T. Dunn in rebuttal contradicted Alex Wilson as to his testimony before the grand jury. One could only state his recollections of the substance of what defendant said, and the other was not clear about it.

*Stanlee & Green* and *Owsley & Ragsdale*, for appellant.—The court rendering the judgment of conviction in this cause was held at a time unauthorized by any law then in force, and said judgment of conviction together with all the proceedings had in the trial of appellant in the court below are null and void.

The trial was had at a term of court which was begun on the 24th day of June, 1895, and adjourned on the 2nd day of July, 1895, the term holding nine days, including Sunday. The law then in force and which had been in force from and after the first day of April, 1895, provided that the District Court in Foard County should be held on the seventeenth Mondays after the first Mondays in February and August. The seventeenth Monday after the first Monday in February fell on the third day of June, 1895. General Laws 1895 (24th legislature), p. 34; Sayles' Texas Civil Stats., Arts. 1127, 1128; Texas Constitution, Art. 5, Sec. 7; Campbell v. Chandler, 37 Texas, 32; Doss v. Waggoner, 3 Texas, 516; Wills v. State, 4 Tex. Crim. App., 616.

The court erred in not limiting by proper charge to the jury the evidence of John Gamble and W. T. Dunn by whom the State sought to impeach Alex Wilson, to the purpose for which it was introduced, to-wit: The discrediting the testimony of Alex Wilson; for the reason that the jury may have taken it as establishing the fact that defendant did not purchase the cow from Alex Wilson.

The evidence of John Gamble and W. T. Dunn was only admissible to discredit the witness, Alex Wilson, but by reason of the fact that such evidence tended to show defendant's guilt, the failure of the trial court to instruct the jury that such evidence could only be considered for the purpose of discrediting said Alex Wilson is such error as requires a reversal of the case. Paris v. State, 35 Tex. Crim. Rep., 82; Maines v. State, 23 Tex. Crim. App., 576; Davidson v. State, 22 Tex. Crim.

App., 372; Taylor v. State, 22 Tex. Crim. App., 530; Washington v. State, 23 Tex. Crim. App., 336.

*Nat. P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.—The question raised in the motion of the appellant is that, two State's witnesses, having been introduced to impeach a defense witness by showing that he made statements of a material matter before the grand jury, which were contradictory of his testimony on the trial, and which statement he denied on this trial that he made before the grand jury, the court committed fundamental error in failing. in its charge, to limit the purpose of this evidence to the impeachment of the impugned witness.

It appears that on his examination in chief, Alex Wilson, the brother and witness of the defendant, testified that the animal slain by the defendant was the identical animal he (witness) had that morning sold the defendant—the issue being of identity, i. e.: whether that was the Hart animal charged in the indictment as insisted by the State, or the animal purchased from Alex Wilson, as insisted by the defense. On cross-examination by the State, the witness denied positively and emphatically, that in his testimony before the grand jury, he denied that he had sold an animal to his brother, defendant, or let him have one.

In rebuttal, the State introduced the witnesses, Gamble and Dunn, both of whom testified that they were members of the grand jury which presented this indictment; that they heard Alex Wilson's testimony before that grand jury, and that Alex Wilson did testify before that body that he did not sell to or authorize the defendant to take or kill any cattle of his on the day charged in the indictment.

The defense assails the sufficiency of the charge in failing to limit the testimony of the witnesses, Gamble and Dunn, to the impeachment of Alex Wilson. The record shows that the charge does not so limit the testimony of said witnesses. The omission is first questioned, and as fundamental error, in the motion for a new trial.

In the Paris case, 35 Tex. Crim. Rep., 82, this court holds: Where evidence admissible only to discredit a witness is such as will tend to show defendant's guilt, it is reversible error to fail to instruct that such evidence is only to be considered for the purpose of discrediting the witness, though no exception is taken to such failure." This decision cites Williams v. State, 25 Tex. Crim. App., 77; Foster v. State, 28 Tex. Crim. App., 45; Rogers v. State, 26 Tex. Crim. App., 404; Thompson v. State, 29 Tex. Crim. App., 208; Shackelford v. State, 27 S. W. Rep., 8.

This ruling in the Paris case is predicated upon proceedings similar at the first glance to those involved in this case. A material question in the Paris case was that of conspiracy between Paris and Parish. Rosa Paris, sister of defendant, being on the stand for the defense, denied that she testified before the grand jury that prior to the murder Parish often called at her house and always asked for defendant and

took him away.  The State then introduced the witness, Harwood, who testified that the witness, Rosa, swore before the grand jury that Parish did often call at her house, and always called for defendant and took him away with him.  It is upon this case that appellant mainly relies in support of his motion.

This distinction will be observed between the two cases—the one cited and the case at bar.  In the Paris case the impugned witness testified before the grand jury with reference to an issue whose every tendency was toward the guilt of the accused.  Independent of the confession of the accused, the State's case rested upon circumstantial evidence, and the confession involved the issue of conspiracy.  That issue became more vital in view of the fact that the defense was otherwise pitched upon the issue that the confession used against him was a fable, concocted by him under employment or inducement, to fasten the crime upon Parish.  In this case the matter testified about to the grand jury, was defensive matter set up by the defense.  It did not "tend to show the defendant's guilt," and though the substance of his evidence was to defeat the prosecution by showing the fact that the accused did not take and kill the animal charged in the indictment, but another he had acquired by purchase it can come only within the category of defensive matter, about which the witness could be discredited.  And it may be that the court should have limited the purpose of the discrediting testimony, but to avail himself of any technical error in the omission, the defense should have promptly excepted, and perpetuated the exception by bill.

Now, it is submitted that Tucker's case, 23 Tex. Crim. App., 512, is in point.  The indictment charged in the first count the theft of a yearling, and in the second, upon which the conviction was had, the receiving of stolen property from one Noon Tucker.  On the trial a State's witness was permitted to testify over defendant's objection, that meeting the defendant driving the animal, he asked him if it was a yearling he had "mavericked"; that the defendant at first made an evasive answer, but afterwards said it was "one they had raised."  (In this case purchase was relied upon.)  That evidence was admitted as competent on the question of the theft by Noon Tucker, and the charge especially restricted its consideration to the second count.  The complaint was that the restriction was not sufficiently broad—that it should have told the jury that they could only consider it in determining the guilt of Noon Tucker of the theft—and essential issue in the case—and not as any proof that defendant was guilty under the second count.  The court said it would have been proper to so additionally restrict the evidence, but that the omission, in the absence of exception, was not reversible error.  This was wholly defensive matter as far as the defendant's statement was concerned, and its effect was to impeach his claim of innocent or rightful possession when that possession was first challenged.

In this case the defendant testified, as did his brother, to the purchase of the cow killed, and that it was not the animal described in the indict-

ment.   The charge of the court presented the law applicable to such
issue of purchase and identity, giving the accused the full benefit of all
evidence in support of his theory.   The record discloses no error for
which the judgment should be reversed in the absence of exception.
The motion should be overruled.

HENDERSON, JUDGE.—Appellant was convicted of the theft of cat-
tle, and given two years in the penitentiary, and prosecutes this appeal.
The only question that requires to be considered by us is as to whether
the court before whom appellant was tried was then holding a legal
term.   The record shows the trial of this cause to have been at a term
of the District Court begun and holden on the 24th day of June, 1895,
and which adjourned on the 2d day of July, 1895.   The trial was in
fact had on the 27th day of June, 1895.   The acts of the legislature of
1892 (see, Acts 22d Leg., p. 58) authorize a District Court to be holden
in Foard County on the twentieth Mondays after the first Mondays in
February and August, and to continue in session until the business is
disposed of.   By reference to the almanac, under this law the District
Court of Foard County should have convened on the 24th day of June,
1895.   But the laws of the legislature of 1895 (see, Acts 24th Leg., p.
34) authorize a District Court to be holden in the county of Foard on
the seventeenth Mondays after the first Mondays in February and
August, and to continue in session until the business of said court is
disposed of.   Said act took effect on its approval, which was April 1,
1895.   This last-mentioned act entirely superseded and repealed the Act
of 1892, under which the courts in said county were formerly held.
While it is true that, if the court had met on the 3d of June, 1895
(which was the seventeenth Monday after the first Monday in Febru-
ary), it could have continued in session, and have been in session on the
27th day of June, 1895, when this case was tried, yet does it follow
that, not having met on the day pointed out and authorized by law, and
the trial having occurred on a day when said court could be legally in
session, said cause was tried during a legal term of said court?   We
think not.   The statute, as before stated, authorizes the holding of a
term beginning on the seventeenth Monday after the first Monday in
February, and the court must begin its session on said day; and if any
contingency happens, that the judge of the court shall fail to attend on
said day authorized for the opening and holding of said court, the stat-
ute provides a method by which a special judge shall be selected, so
that there shall be no failure of the term.   See, Rev. Civ. Stat., 1895,
Art. 1071.   The former statute on this subject was Article 1412, Pasch.
Dig., which authorizes, in case the judge did not appear on the day ap-
pointed by law for the opening of the term, that the sheriff should ad-
journ the term from day to day for three days, and that on the morning
of the fourth day, the judge having not appeared, the court should be
finally adjourned.   The act first quoted on this subject was evidently
intended to and did supersede and repeal said last-mentioned act.   It

does not appear in this case that any court was begun and holden on the day authorized by the Act of 1895, which was then in force. Doubtless the new law on the subject, although it had been in force some months, had not come to the attention of the judge holding this court, and he attempted to convene and hold a court under the former law, which had been repealed. In our opinion, the conviction in this case was had at a term of court not authorized by law. The court, not having convened when authorized, could not convene and hold a term at some subsequent day. Because the appellant in this case was not convicted at a term of court authorized by law, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

---

ON FIRST MOTION FOR REHEARING MADE ON PART OF THE STATE.

HENDERSON, JUDGE.—This case was reversed at the Austin term, 1896, and it now comes before us on motion for rehearing on the part of the State. The motion for a rehearing brings in question the constitutionality of the law of the Twenty-fourth Legislature, changing the time of holding the District Court in the Forty-sixth Judicial District; it being contended that the law of 1895, if given effect from the date of its approval, which was April 1st, 1895, would be violative of Sec. 7, Art. 5, of the Constitution of the State of Texas. That part of said section claimed to be violated by the act in question reads as follows: "He [the District Judge] shall hold the regular terms of his court at the county seat of each county in his district, at least twice each year, in such manner as may be prescribed by law." This is a nice question, and, if it was one of first impression, would be fraught with some difficulty of construction; but a similar clause in a prior constitution was construed by the Supreme Court of this State in Womack v. Womack, 17 Texas, 1, and it was there held, if a law was passed by the legislature which, if given immediate effect, as provided by the act, would deprive a county of its constitutional two terms during the year, the new law so changing the holding of courts would be postponed and not given effect until such time as the constitutional two terms during the year could be held. This was followed by our Court of Appeals in Graves v. State, 6 Tex. Crim. App., 228, and in Ex parte Murphy, 27 Tex. Crim. App., 492. So that this question may be considered as settled in this State. By looking to the law of 1892, which, prior to the Act of 1895, regulated the terms of holding court in the various counties composing the Forty-sixth Judicial District, we see that the act authorized one of the terms of the District Court of Greer County to be held on the eighth Monday after the first Monday in February, which, in the year 1895, would be on the 1st day of April. By reference to the law of 1895, we observe that this act requires a term of the District Court in said district to be held in the county of Collingsworth on the eighth Monday

after the first Monday in February, which, as above stated, would fall on the 1st day of April in the year 1895. The new law provided that the spring term of the District Court of Greer County should be holden on the sixth Monday after the first Monday in February, which would fall on the 18th day of March in the year 1895. Now, this date for holding the spring term in Greer County had already passed when the new law took effect, and no court had hitherto been holden in Greer County for the spring term of 1895. The date for holding the same, as above stated, fell on the 1st day of April, the very day when the new law required court to be holden in Collingsworth County. So, to give effect to the new law on the 1st day of April, as provided in the Act of 1895, would be to deprive Greer County, one of the counties in said Forty-sixth Judicial District, of one of its two terms during the year 1895. So, as before stated, under former decisions of this court, the taking effect of the new act should be postponed until such time as it could take effect so as to give the constitutional guaranty of two terms of court to each county in the district for the year; and pending the time when such new act should take effect, the Act of 1892, already in existence, would have effect, and regulate the terms of holding court in said judicial district. The court at which this conviction was had convened in Foard County on the 24th of June, 1895, at a time authorized for it to convene under the Act of 1892. This, we hold, was the time authorized by law, and was a legal term of said court. On the argument of the case there seemed to have been some disagreement between counsel for the State and the appellant as to the testimony of the witness, Jamison, and appellant's counsel requested that court have the witness recalled in order to settle the controversy. This the court declined to do. Our statute lays down the practice in this particular, and leaves it with the jury to make such request, and it does not appear that they did so in this case. There is no error in the charge of the court instructing the jury that it was not necessary for the State to prove the want of consent of J. S. Woods to the taking of the cattle. The unquestioned proof in the case showed that Tebe Hart was in the exclusive care, control and management of the cattle, though the ultimate title to the same was in one J. S. Woods; that Woods was not in the country at the time, but was a resident of some foreign country, and had nothing to do with the control and management of the cattle. If the appellant had or claimed any consent from Woods, or any one else besides Tebe Hart, to take said head of cattle, this proof should have been offered by him. Appellant also claims that the verdict of the jury is not supported by the evidence. We have examined the records carefully, and in our opinion the evidence warranted the verdict. The only real question in the case was as to the identity of the animal in question; that is, whether or not it was the head of cattle belonging to Tebe Hart, and not the head of cattle claimed by the appellant to have been sold to him by his brother, Alex Wilson. This issue was fairly submitted by the jury in the charge of

the court.   While the appellant offered testimony tending to show that
the head of cattle he butchered (and which was alleged to have been
stolen by him), was a head of cattle purchased by him from his brother,
yet the State, in rebuttal, introduced evidence tending to impeach this
claim of appellant.   The evidence introduced by the State, we believe,
showed beyond any reasonable doubt that the head of cattle taken by
the appellant was in fact the head of cattle of Tebe Hart, that ran with
Dickerson's cattle, and came up with them every night until the 24th
of December, and has never been seen since that date.   It is true that
young Dickerson did not see the brand on the head of cattle appellant
was driving on the morning of the 24th, but he reasonably identified it,
by its flesh marks and general appearance, to be the same one which he
knew as the "Hart heifer" which ran with his father's cattle.  The
motion for a rehearing is granted, and the judgment is affirmed.

*Motion Granted and Judgment Affirmed.*

---

ON SECOND MOTION FOR REHEARING ON PART OF APPELLANT.

HENDERSON, JUDGE.—A motion for rehearing was granted at a
former term of this court, and the former opinion of the court reversed,
and the judgment of the lower court affirmed.   It again comes before
us on motion for rehearing filed by appellant.   The only question to be
considered is the failure of the court to limit the purpose of certain im-
peaching testimony.   The defense set up to the charge of theft was that
appellant had bought the head of cattle in question from his brother,
Alex Wilson.   On the trial, Alex Wilson was introduced by the appel-
lant and testified that he sold defendant a red heifer on December 24,
1894.   (The State's proof tended to show the animal stolen was a red
heifer, belonging to another person, which was taken on said December
24, 1894.)   On cross-examination of this witness by the State, he was
asked if he did not testify in the grand jury room, at the last term of
the District Court, that he had not sold or let his brother, Willis Wil-
son, have any cattle, and he answered that he had not so testified.   The
State was then permitted to introduce two members of the grand jury,
who testified that said Alex Wilson was examined as to said matter be-
fore the grand jury, and they stated that said witness did state on his
examination before the grand jury that he had not sold his brother,
Willis Wilson, any cattle at said time.   Appellant insists that the court
should have limited this testimony to the sole purpose for which it was
introduced, to-wit: for the purpose of impeaching the said witness,
Alex Wilson, although not requested so to do, and no exception was
taken to the failure of the court so to charge; yet it is insisted that this
was fundamental error, and he cites us to Paris v. State, 35 Tex. Crim.
Rep., 82; Maines v. State, 23 Tex. Crim. App., 576; Washington v.

State, 23 Tex. Crim. App., 336; Davidson v. State, 22 Tex. Crim. App., 372. The principle to be extracted from these cases is well settled in the case of Maines v. State, supra, cited by counsel, and we quote therefrom as follows: "The general rule is that whenever extraneous matter is admitted in evidence for a specific purpose incidental to, but which is not admissible directly to prove, the main issue, and which might tend, if not explained, to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to the right of the party, then it becomes the imperative duty of the court in its charge to so limit and restrict it as that such unwarranted results cannot ensue; and the failure to do so will be radical and reversible error, even though the charge be not excepted to." And it will be found on an examination of the cases cited by counsel that from the very nature of the testimony it was, unless limited, calculated to injure the rights of the appellant. Besides these, there are a great number of cases on the same line. In some of them a charge is required, because there is danger of the conviction of defendant for some offense proved other than charged in the indictment. In other cases, while the evidence is admissible for the purpose of impeachment, it is calculated to be unduly used by the jury for some other purpose than as impeachment testimony. The converse of this is equally true; that is, where the testimony can be used for no other purpose than that of impeachment, it is not necessary for the court to limit the purpose of the same in its charge. See, Moseley v. State, 36 Tex. Crim. Rep., 578. The simple question is, whether the testimony which was adduced for the purpose of impeaching the witness, Alex Wilson, under the circumstances of this case, could have been used by the jury for any other purpose detrimental to the accused. If no witness but Alex Wilson had testified to the sale of the red heifer to his brother, the defendant, then the jury would not have probably used it for any other purpose than to impeach the witness. Alex Wilson having sworn on the trial that he let his brother have a heifer, which was taken and killed, proof that he had stated before the grand jury that he had not sold the heifer to his brother was in direct conflict with his testimony on the trial of the case. He was thus impeached, and the jury, under such an impeachment, would have been justified, if the other facts warranted it, in disbelieving him altogether. But the appellant was a witness in the case, and he swore positively that he obtained the animal taken and killed by him from his brother, Alex Wilson. Now, while the testimony of the two grand jurors was admissible for the purpose of impeaching Alex Wilson, and thus destroying his testimony, the statements made by Alex Wilson to the grand jury could not have been used for the purpose of impeaching the testimony of the appellant. The jury in this case may have used this testimony for both purposes—not only for the purpose of destroying the testimony of Alex Wilson, but as evidence showing that in fact the appellant had not obtained the animal, as sworn to by him, from his brother. Let us suppose that Alex Wilson had not been a wit-

ness in the case, and defendant had sworn that he had obtained the animal in question from Alex Wilson, what Alex stated before the grand jury, whether under oath or not, would not have been admissible in the case, unless Alex was a witness, and then for the sole purpose of impeaching him. The State's case is as follows: "That the heifer had been running on that range from a calf up to the time it was missed; that a witness saw appellant driving a heifer corresponding with that which belonged to the prosecutor, and that that heifer was slaughtered by appellant. No witness swears that the animal slaughtered by appellant bore the brand of the prosecutor. The boy who saw him driving it did not see the brand. Defendant himself swore to the same facts as his brother, Alex Wilson. Now, this was the issue—whether or not appellant had taken an animal belonging to the prosecutor. In support of this defense, he relied upon the testimony of his brother and himself. The State contradicted the brother, and the jury may have used this contradictory evidence for the purpose of showing that in fact appellant did not obtain the animal from his brother, and that the defense was manufactured. Under this state of case it was of vital importance that the court should have limited the impeaching testimony to its proper purpose, instructing the jury that they could only use it for the purpose of impeaching Alex Wilson, etc. We are of opinion that the omission in the charge of the court, as above indicated, was calculated to injure the rights of the accused under the circumstances of this case, and a rehearing is granted, and the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*