**SHEPARD v. UNITED STATES.**
No. 564.

Circuit Court of Appeals, Tenth Circuit.
Jan. 9, 1933.

C. L. Kagey, of Wichita, Kan., and Harry W. Colmery, of Topeka, Kan. (Hal M. Black, of Wichita, Kan., Harry S. Class, of Denver, Colo., L. M. Kagey, of Wichita, Kan., L. W. Lundblade, of Beloit, Kan., A. E. Crane and Balfour S. Jeffrey, both of Topeka, Kan., Kagey & Black, of Wichita, Kan., Kagey, Lundblade & Kagey, of Beloit, Kan., and Doran, Kline, Colmery & Cosgrove, of Topeka, Kan., on the brief), for appellant.

S. M. Brewster, U. S. Atty., and L. E. Wyman, Asst. U. S. Atty., both of Topeka, Kan. (Donald Little and Dan B. Cowie, Asst. U. S. Attys., both of Topeka, Kan., on the brief), for the United States.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

Charles A. Shepard was convicted of murdering his wife, Zenana Shepard, by poisoning, June 15, 1929, on the United States Military Reservation, at Fort Riley, Kan. The verdict of the jury was returned without capital punishment and the defendant was sentenced to life imprisonment. He appeals, relying on eight assignments of error, which embrace complaints of: (1) The exclusion of jurors; (2) refusal to direct a verdict for the defendant; (3) the admission of incompetent evidence; and (4) prejudicial comments on the evidence.

1. The defendant exhausted his peremptory challenges. Ten additional jurors were excused by the court, and others were

called and retained. Those excused had read an article printed in the Kansas City Star, purporting to emanate from the defendant, shortly before the trial. One of them, interrogated by the court and counsel for both sides, believed the article was a statement by the defendant, and answered he thought it would be considered. The others of those jurors were examined solely by the court, all had read the article, and they were excused without allowing inquiry from counsel for the defendant. The objections were to the excuse of these jurors, and to the denial of a motion to quash the panel on that ground.

The view of the court was reflected in a remark that the defendant may not put his statement in a newspaper, get it to the jurors, and ask them to sit in the case. We quite agree it was not permissible for the defendant to create an atmosphere favorable to his defense and be tried by jurors subject to such influence. The newspaper article was introduced for the use of the court, but is not in the record. The trial court has the duty to pass on the qualifications of the jurors. Its action is not reviewable, unless it discloses an abuse of discretion. While there was no showing that the defendant wrote or inspired the article, the court had the discretion to determine its effect; and no error arose because the court examined the jurors. Remus v. United States (C. C. A.) 291 F. 501; Assaid v. United States (C. C. A.) 10 F.(2d) 752; Hopt v. Utah, 120 U. S. 430, 435, 7 S. Ct. 614, 30 L. Ed. 708; Northern Pacific R. R. Co. v. Herbert, 116 U. S. 642, 646, 6 S. Ct. 590, 29 L. Ed. 755. In any event, the defendant has no ground of complaint, as he was tried before an impartial jury. Hayes v. Missouri, 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 578; Howard v. Kentucky, 200 U. S. 164, 26 S. Ct. 189, 50 L. Ed. 421.

■ 2. The motion to direct a verdict is based on the insufficiency of evidence to warrant the conviction. The prosecution claims the defendant poisoned his wife, with the motive of marrying Grace Brandon, with whom he had become enamored. We condense the evidence of guilt to the point that will illustrate its sufficiency.

The defendant and his wife were married at Los Angeles, in 1916. He is a medical officer in the United States Army, and was commissioned as a major during the World War. Since that time he has been stationed at various posts, and in 1928 was transferred to Fort Riley, Kan. His wife accompanied him. In that year, leaving his wife at Fort Riley, he took a flight surgeon's course at Brooks Field, near San Antonio, Tex. While there, he met Grace Brandon and took her to dinners, dances, theaters, and other places of entertainment. He told her he and his wife were not congenial, but kept up appearances for the sake of his rank and reputation. In November, 1928, at Neuvo Laredo, Mexico, he asked Miss Brandon to marry him if he should get a divorce; and she assented. The promise was repeatedly made. He protested his love for her, and frequently made her gifts of candy, flowers, jewelry, and other articles. He asked her to write to him at Junction City, Kan., where he rented a post office box. He wrote to her often, occasionally several times a day, until after his arrest.

In his letters he spoke of their marriage, and shortly before his wife became ill he wrote Miss Brandon his wife had changed her mind about a divorce, and he was depressed because of her request for an excessive financial settlement; also, that he had made over to Miss Brandon his life insurance of about $30,000. The correspondence with her was addressed in affectionate terms. In May, 1929, a few days before Mrs. Shepard became ill, he ordered a canary bird sent to Miss Brandon, but it did not reach her until two days before Mrs. Shepard's illness began.

Soon after his return from San Antonio in December, 1928, the defendant obtained some bichloride of mercury tablets from the pharmacist at the post dispensary. He obtained other such tablets there in March, 1929, and in the following month he obtained a prescription for a like tablet dissolved in eight ounces of alcohol. In his statement made to the agents of the Department of Justice he denied the fact, but in his testimony said all doctors carried the tablets for disinfectant purposes. He also obtained from the dispensary about two hundred empty capsules. He had access to the dispensary and had the keys to it every five or six days, as officer of the day.

Mrs. Shepard enjoyed good health. In the afternoon of May 20, 1929, she went to Junction City to mail a letter. After her return defendant gave her a ginger ale highball. Later that evening, Mrs. Gertrude Skow, in answer to a call from Mrs. Shepard during her absence, telephoned the Shepard home and talked with the defendant, who told her that Mrs. Shepard was desperately ill and the doctor was there. She and Mrs. Constance Gates, another friend of Mrs. Shepard (both wives of army officers), called at the Shepard home but did not see her, and were told by the defendant she had gotten some bad liquor.

Major Edward J. Strickler, a psychiatrist summoned by defendant, called at 8 o'clock. At about 9 o'clock, defendant called Mrs. Skow, asking her to stay with Mrs. Shepard until he could go for a nurse. He met Clara Brown, a nurse from Topeka, at Junction City, and she arrived that night. He told the nurse Mrs. Shepard had a nervous breakdown, and she need not keep a record of the case. Mrs. Shepard was found delirious and vomiting, and her eyes were dilated. The defendant prepared capsules for Mrs. Shepard and the nurse gave them to her, one at a time. He said the capsules contained sodium bicarbonate and luminol. There were others he said contained bismuth.

The next day, the defendant told Alice McDonald he did not think the patient would get well. Mrs. Shepard suffered and had hemorrhages. Defendant told Major Martin Du Frenne he thought she was a chronic alcoholic, and had a chronic appendix. He also told Major Paul R. Hawley she had heart trouble. But no evidence was found of either condition. Her mouth became sore and foul and a dentist prescribed a wash containing mercuric chloride, but she used only a little of it. She lingered until she died on June 15, 1929.

The defendant opposed an autopsy asked by the officers, but yielded when it was ordered by General Symonds. The viscera were examined by several specialists and revealed the presence of mercury, taken in small doses. They agreed it was the cause of the death. This is practically conceded by counsel for the defendant.

Shepard went with the remains to Los Angeles for cremation. Before he left, he advised Miss Brandon of the time of his departure, and stated that he would be at the Roslyn Hotel. He wired her the night of his arrival. On June 29, he wired General Ireland a request for a transfer to the hospital at Fort Sam Houston, near San Antonio. He wrote to Miss Brandon while en route from Los Angeles to Fort Riley. Immediately after his return, he obtained leave to go to Denver to sell some lots, but went directly to San Antonio, arriving there on June 30. The day previous, he wired Miss Brandon from Waco he would telephone her on arrival at hotel, signing, "Love, Charlie." He met her and while driving with her, proposed a secret marriage. On her refusal, they fixed their wedding date for August, 1930. He continued to send her gifts and bought her a car. He made repeated efforts to obtain a transfer to San Antonio.

There was such an array of circumstances pointing to defendant's guilt as to leave no doubt of its sufficiency to withstand the motion for a directed verdict.

3. The main testimony objected to was that of Sergeant J. C. Gresser and the nurse, Clara Brown, admitted in rebuttal. The sergeant testified that on the fourth or fifth day of her illness, Mrs. Shepard said she believed she was being poisoned. Nurse Brown testified Mrs. Shepard said on the second day of her illness "she was being poisoned," and "Doctor Shepard has poisoned me."

The testimony of these witnesses was not admissible as dying declarations. There was testimony that Mrs. Shepard said she would not get well, had made threats of suicide, and did not want to recover; and it is a fair inference she believed she would not recover. But there is no evidence that she believed death was impending or about to ensue. Death need not actually follow as anticipated, but it is necessary that the patient believe it to be imminent. It is then an exception to the rule excluding hearsay arises, the temptation to falsehood being removed. Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917; Wigmore on Evidence (2d Ed.) vol. 3, §§ 1440, 1441. The testimony of Sergeant Gresser was that the statement of Mrs. Shepard was not one of fact but opinion, and for that reason it was not admissible as a dying declaration. Wigmore on Evidence (2d Ed.) vol. 3, § 1447; 30 C. J. p. 274; Ehrhardt v. People, 51 Colo. 205, 117 P. 164.

But we are convinced the declarations were admissible to rebut the theory of suicide, advanced by the defense. The statements imputed to Mrs. Shepard that she contemplated suicide and did not expect or want to get well, reflected the state of her mind and tended to show the poison was self-administered. To rebut that testimony, the declarations that her husband had poisoned her and she believed she had been poisoned were clearly competent as tending to show a different state of mind. State v. Kuhn, 117 Iowa, 216, 90 N. W. 733; 30 C. J. p. 165; Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706; State v. Hayward, 62 Minn. 474, 65 N. W. 63; Commonwealth v. Trefethen, 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235.

It is argued that as the testimony was not of dying declarations, it was error to admit it, unless the jury was instructed as to the purpose for which it might be considered. There is authority for the contention. It was held error to omit the instruction where the evidence was long or involved, in a conspiracy

case. Minner v. United States (C. C. A.) 57 F.(2d) 506. But the general rule, which should be applied here, requires the adverse party to request such an instruction when he desires the benefit of it, and it was not done in this case. Butler v. United States (C. C. A.) 53 F.(2d) 800; Moffatt v. United States (C. C. A.) 232 F. 522; Hallowell v. United States (C. C. A.) 253 F. 865; Id. (C. C. A.) 258 F. 237, certiorari denied 249 U. S. 615, 39 S. Ct. 390, 63 L. Ed. 803; Id., 251 U. S. 559, 40 S. Ct. 180, 64 L. Ed. 413; Stassi v. United States (C. C. A.) 50 F.(2d) 526. Instead, when the instructions were finished, counsel for the defendant stated he was satisfied with them. This foreclosed objections to them. Mann v. United States (C. C. A.) 49 F.(2d) 131; Najera v. Bombardieri (C. C. A.) 46 F.(2d) 281; Wong Tai v. United States, 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545.

■ Objection is urged to the introduction in evidence of various letters which were written by defendant to Miss Brandon, those he wrote to the concerns from which the gifts were obtained by him for her, and to the articles sent to her. The argument is the court abused its discretion in admitting those exhibits. The obvious answer is they tended to establish a motive on defendant's part to perpetrate the crime charged. There is no force whatever in the objection.

■ The account given by the defendant to the agents of the Department of Justice is assailed. He stated he was advised as to his constitutional rights and made his statement freely and voluntarily. An admission given under such circumstances is properly received in evidence. Perovich v. United States, 205 U. S. 86, 91, 27 S. Ct. 456, 51 L. Ed. 722; O'Neill v. United States (C. C. A.) 19 F.(2d) 322.

■ The introduction of Mrs. Shepard's letters to her kin and mother were also questioned. They were offered to show the frame of her mind as being opposed to suicide. They were admissible on the same grounds as were her conversations.

4. Finally, it is urged that the court indulged in prejudicial comments upon the evidence, in ruling upon the objections. Those pointed out by counsel do not sustain their complaint. There were unwarranted remarks to counsel in different instances, but they were insufficient to constitute reversible error.

The charge to the jury is assailed, in that it reviewed the evidence in favor of the prosecution in more detail than that favoring the defense. This was a natural course, in view of the burden to establish the offense by cir-

cumstantial evidence. But it suffices to say that the charge was accepted as satisfactory by the defendant's counsel.

We are of the opinion that the record discloses no material error, and for that reason the judgment in this case is affirmed.

PHILLIPS, Circuit Judge (dissenting).

Nurse Brown testified, in response to a question propounded by the Court during the introduction of the Government's evidence in rebuttal, "She (Mrs. Shepard) said, 'Dr. Shepard has poisoned me.'" The United States Attorney, apparently believing that such evidence was inadmissible, requested the Court to strike it. Thereupon the Court instructed the jury that the evidence was stricken and withdrawn from their consideration.

The following day the United States Attorney recalled Nurse Brown and undertook to lay a foundation for this evidence as a dying declaration. Nurse Brown testified that Mrs. Shepard on the second day of her illness said "she was not going to get well; she was going to die"; and that on subsequent occasions Mrs. Shepard said "she was going to die." Following this preliminary evidence, the following proceedings occurred:

"Q. At the time she told you, on the second day that you were there, that she was going to die, did you, at that time and in that connection, have a conversation with her in reference to her condition?

"A. Yes.

"Q. What was it?

"Mr. Kagey: We object to that as hearsay, not made in the presence of defendant, incompetent, irrelevant and immaterial.

"The Court: You may answer.

"Mr. Kagey: We except.

"The Court: Read the question, Mr. Reporter. (Last question read as above recorded.)

"A. She asked me if I would do her a favor. I consented. Then she told me to go to Major Shepard's room and, in his closet, get a quart whiskey bottle off the shelf.

"Mr. Kagey: What kind of a whiskey bottle?

"The Witness: It was a quart.

"Mr. Kagey: A quart?

"The Witness: Yes. It was a dark green whiskey bottle, with a whiskey label, which she said was the one—

"Mr. Brewster: Did you make more than one trip before you brought the bottle?

"A. I did.

"Q. Go ahead and state what she said to you.

"A. She asked me to smell the contents. I did so. She then asked me if it smelled peculiar. I told her I did not know. She asked how much was in the bottle. I noticed there was not more than a tablespoonful; there was not more than a tablespoonful; and told her.

\* \* \*

"She said she knew there could not be but a small amount, because the last time she had taken a drink out of that bottle, she made a remark to Major Shepard, that there was not only enough for about one more drink, and she was going to save that until she needed it. She asked if that was enough to test for poison. I told her I did not know.

"Mr. Brewster: Now, go ahead and state what, if anything, she said as to how she took sick, and what she did.

"Mr. Kagey: We object to this as incompetent, irrelevant and immaterial, hearsay, not rebuttal testimony, incompetent, irrelevant and immaterial.

"The Court: She may answer.

"Mr. Kagey: We except.

"A. She stated that this was the bottle from which she drank just before collapsing on the evening of May 20.

"Mr. Brewster: Q. What did she say as to the taste of it the night she took sick, the 20th?

"Mr. Kagey: Object to this as leading.

"Mr. Brewster: What, if anything?

"Mr. Kagey: Objected to for the further reason that it is hearsay, not rebuttal, a conversation not shown to have been made in the presence of the defendant.

"The Court: You may answer.

"Mr. Kagey: Except.

"A. It was altogether different.

"Mr. Brewster: What did she say? Give her words.

"A. It was not good.

"Q. Did she say anything about how it tasted?

"Mr. Kagey: Same objection.

"The Court: You may answer.

"Mr. Kagey: Except.

"A. She said that she was being poisoned.

"Mr. Brewster: What did she say? Give her words?

"Mr. Kagey: All right; we object to this, also, as incompetent, irrelevant and immaterial, hearsay, not made in the presence of the defendant, not rebuttal.

"The Court: You may answer.

"Mr. Kagey: Except.

"A. She said: 'Dr. Shepard has poisoned me.'"

To render the statements of Mrs. Shepard admissible as dying declarations, it was essential to show that they were made under a belief of certain and almost immediate dissolution. Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917; Carver v. United States, 160 U. S. 553, 16 S. Ct. 388, 40 L. Ed. 532; Carver v. United States, 164 U. S. 694, 17 S. Ct. 228, 41 L. Ed. 602. Wigmore on Evidence (2d Ed.) §§ 1438–1441.

The Government failed to establish that Mrs. Shepard, at the time she made such statements, believed her death was certain and imminent. The statements, therefore, were not admissible as evidence of the facts stated.

It is my opinion that this evidence was not admissible to show a state of mind for the purpose of refuting other declarations showing a state of mind disposed to suicide.

The existence of a plan or design of a person to do a specific act is relevant to show that the act was done. Such a plan or design may be evidenced by the person's conduct; and since a plan or design is a state of mind, its presence or absence may be evidenced by the person's declarations relevant thereto. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706; Kerr v. Modern Woodmen of America (C. C. A. 8) 117 F. 593; Farrar v. Locomotive Engineers' Mutual L. & A. Ins. Association, 143 Minn. 468, 173 N. W. 705; Wigmore on Evidence (2d Ed.) Vol. 3, § 1725. But such declarations are competent to show only the mental state of the person, and not the facts stated in the declaration. In re Carson's Estate, 184 Cal. 437, 194 P. 5, 17 A. L. R. 239; In re Calkins' Estate 112 Cal. 296, 44 P. 577. Therefore, where the declaration is a narration of a past event, it is not admissible as proof that such event happened unless it is part of the res gestæ or a dying declaration. In re Calkins' Estate supra; Shailer v. Bumstead, 99 Mass. 112; Potter v. Baldwin, 133 Mass. 427; Waterman v. Whitney, 11 N. Y. 157, 168, 62 Am. Dec. 71; Marx v. McGlynn, 88 N. Y. 357, 374; Bush v. Bush, 87 Mo. 480; Griffith v. Diffenderffer, 50 Md. 466.

A person disposed to commit suicide is as susceptible of being murdered as one not so disposed. Therefore, the statement that the defendant poisoned Mrs. Shepard, or that she believed that he poisoned her, would not refute the fact that she intended to commit sui-

cide. It would only show that she did not carry out any such intention. It would in no wise indicate her state of mind with respect to suicide. Its sole probative value was as evidence of the facts stated. In other words, to have any relevancy, it would have to be considered by the jury as evidence of a substantive fact, and not of a mere state of mind.

Clearly neither Mrs. Shepard's opinion as to the cause of her death, nor her statements as to the cause of her death—foundation for their admission as dying declarations being absent—were admissible to prove that the defendant murdered her, and therefore she did not commit suicide.

While a statement that she desired to live, that she had future plans which she desired to carry out, or like declarations by Mrs. Shepard would have indicated a present state of mind not disposed to suicide and would have been admissible to show such state of mind, a mere narration of past events not inconsistent with a disposition to commit suicide did not show a state of mind with respect to suicide and was inadmissible for any purpose.

Furthermore, since such statements are not made in court and the declarant is not subjected to the test of cross-examination, they should only be admitted where the facts bring them within the Necessity principle, and there are circumstantial guarantees of trustworthiness. Wigmore on Evidence (2d Ed.) vol. 3, §§ 1725, 1714, 1421, and 1422. While the facts in the instant case bring the declarations within the Necessity principle, such guarantees are not present. The statements occurred after the cause of Mrs. Shepard's death had been set in motion. They were not in the nature of verbal acts indicating a present state of mind, but were a narration of past events. Had she taken poison with suicidal intent, she might have been disposed to conceal it, and it would have been no more than a human failing to have laid it at the door of her husband, for whom she had confessedly lost all love and respect. At the time they were made she was ill, her mental condition was abnormal, and there was no showing that she believed her death was certain and imminent. The facts, instead of indicating the presence of circumstantial guarantees of trustworthiness, cast doubt upon the reliability of the statements. Therefore, even if such declarations tended to show the state of Mrs. Shepard's mind, they were inadmissible. Wigmore on Evidence (2d Ed.) vol. 3, § 1722.

But if such declarations were admissible, not as evidence of the facts stated but to show Mrs. Shepard's state of mind to rebut any inference of suicide from other statements she had made, it was the duty of the Court to so limit them by proper instructions. Minner v. United States (C. C. A. 10) 57 F.(2d) 506; Wilson v. State, 37 Tex. Cr. R. 373, 35 S. W. 390, 38 S. W. 624, 39 S. W. 373; Maines v. State, 23 Tex. App. 576, 5 S. W. 123, 125. In the latter case the court said: "The general rule is 'that whenever extraneous matter is admitted in evidence for a specific purpose, incidental to, but which is not admissible directly to prove, the main issue, and which might tend, if not explained, to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to the rights of a party; then it becomes the imperative duty of the court in its charge to so limit and restrict it as that such unwarranted results cannot ensue; and a failure to do so will be radical and revisable error, even though the charge be not excepted to.' " The majority say the failure to give such instruction was waived by the omission of defendant's counsel to request it, and by their failure to except to the charge as given.

They undertake to distinguish the instant case from the Minner Case by saying that the record in the latter case was long and involved. With all deference to the majority, the record in this case is larger and more involved than was the record in the Minner Case.

That a defendant may be "waived" into the penitentiary for life is repugnant to my conception of justice.

Furthermore, since the evidence was offered and admitted as dying declarations, that is, as proof of the substantive fact, and not to show a state of mind, it is apparent such a request or objection would have been futile. An instruction so limiting it would have been inconsistent with the theory upon which it was offered and received.

However, even if this court is not bound to notice such error, our rules provide and we have held that it may not do so.

In Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584, 587, the court said:

"We recognize the general rule that a complaining party must call the attention of the court to any claimed error in the trial proceedings at the time it occurs, and if he fails to do so an appellate court will not, usually, consider such claims, although the errors complained of are clearly prejudicial. * * *

" 'But there is an exception to this rule as

well established, as just and equitable, as the rule itself. It is that in criminal cases, involving the life or liberty of the accused, the appellate courts of the United States may notice and correct, in the interest of a just enforcement of the law, serious errors in the trial of their cases, fatal to the defendant's rights, although these errors were not challenged or reserved by objections, exceptions, or assignments of error.' "

In New York Cent. R. Co. v. Johnson, 279 U. S. 310, 49 S. Ct. 300, 303, 73 L. Ed. 706, the court said:

"The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted. * * * The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice. * * * Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error."

See, also, Lamento v. United States (C. C. A. 8) 4 F.(2d) 901, 904; Van Gorder v. United States (C. C. A. 8) 21 F.(2d) 939; Crawford v. United States, 212 U. S. 183, 194, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392.

There was evidence that shortly after Mrs. Shepard became ill she developed a severe case of Vincent's angina (Trench Mouth), and that a major in the Dental Corps of the United States Army, of broad experience in the treatment of that disease, diagnosed it as such and prescribed a mouthwash containing mercuric chloride, and that she used about five pints of such mouthwash. The history of her case indicates she received the mercury in small quantities over a period of time and not in one lethal dose, and reputable medical experts testified she might have absorbed it through the membrane of the mouth in sufficient amounts to have caused her death. There was other evidence tending to show that Mrs. Shepard may have taken bichloride of mercury accidentally, or with suicidal intent. It is a well known medical fact that acute nephritis is always present in cases of bichloride of mercury poisoning, and the autopsy disclosed little, if any, inflammation of the kidneys. The absence of nephritis makes it doubtful that Mrs. Shepard received sufficient quantities of the mercury to have caused her death. In view of these facts, it cannot be said that the proof of guilt was conclusive.

The statements of Mrs. Shepard, admitted

broadly as evidence of the facts stated, undoubtedly were largely responsible for the jury's verdict of guilty.

I think the admission of the declarations for any purpose was error. But, if they were admissible for a limited purpose, it was error not to confine the jury's consideration thereof to that limited purpose by proper instructions. Such error was not negative like a mere failure to instruct upon a point, but positive in that the jury was permitted to consider the evidence as proof of a fact of which it was no proof.

For these reasons I am of the opinion that the defendant should be granted a new trial.