# DALLAS TERM, 1896.

---

JAY OWENS v. THE STATE.

*No. 869.   Decided January 15th, 1896.*

**1.  Indictment—Rape—Incest—Repugnancy.**

An indictment which, in one count, charges rape and in another incest, both offenses growing out of the same transaction, is neither duplicitous nor obnoxious for repugnancy.

**2.  Same—Mode of Trial.**

On a trial under an indictment which charged two offenses, one of which was a capital felony and the other not, defendant cannot be heard to complain that the mode of the procedure and conduct of the trial was such as is provided for capital felonies, such mode of trial being more liberal than would have been allowed in the non-capital case.

**3.  Impeachment of Witness—Limiting and Restricting Such Evidence in the Charge.**

Where, on cross-examination of defendant's witness, he was asked if he had not told one R. that defendant had attempted to suborn him, "to get him out?" and the witness answered, "that he did not," whereupon the State introduced R., who testified that the witness had so stated to him.  Held:  That the testimony being only admissible for the purpose of discrediting the State's witness, it was the duty of the court, in the charge, to limit and restrict it to such purpose.

**4.  New Trial—Newly Discovered Evidence.**

On a trial for rape, where a witness for the State has testified that he and one T. saw the defendant and the prosecutrix in the act of carnal intercourse, the said T. being absent and his whereabouts unknown to either party, at the trial defendant being also ignorant of what the testimony of the said T. would have been as to the point in question.  Held:  That a new trial for newly discovered evidence should have been granted, which was supported by the affidavit of T., pointedly denying that he had ever witnessed such act of carnal intercourse between the parties.

APPEAL from the District Court of Williamson.   Tried below before Hon. R. E. BROOKS.

This appeal is from a conviction for rape, the punishment being assessed at death.

The injured party was Pearl Owens, the 13-year-old daughter of Jay Owens, the defendant.   She testified to sixteen different acts of carnal intercourse with defendant, which she was compelled to submit to through fear and cruel treatment of defendant.   Her person was examined by physicians, who testified, that her hymen was ruptured and vagina dilated, and showing evidence that it had been frequently penetrated.

Sam Owens, the 15-year-old-son of defendant, testified, that he had, on one occasion, seen his father on his little sister having connection with her.   This witness also testified: "One day, after this, Doss Taylor and I saw pap through the window on the bed on Pearl.   On that day pap saw us and jumped up.   I saw his peter.   Pearl jumped up and pulled down her dress.   I told mother.   I have seen my father beat my sister Pearl often."   Doss Taylor was absent at the trial, and the witnesses, none of them, knew where he had gone.   Process had been sued out for him both by the State and defendant, and the officers had made diligent, but ineffectual efforts to find him.

Defendant testified in his own behalf.   Denied that he had ever had sexual intercourse with his daughter, Pearl.   He stated that the prosecution was instigated by his wife, with whom he had lived unhappily since his return from the penitentiary several years ago, and his finding letters in a trunk proving that she had been unfaithful to him.

Efforts were made to impeach Pearl Owens by showing contradictory statements made by her to Mrs. Pate Chapman, but Mrs. Chapman was herself impeached for want of truth and veracity, as was her husband, Pate Chapman, another witness for defendant.

After defendant was found guilty and his first motion for new trial had been overruled, it was ascertained that Dorsey Taylor, the absent witness, was at Brenham, in Washington County.   Defendant made a

supplemental motion for new trial, one of the grounds being newly discovered evidence of said Dorsey Taylor, as shown by the following affidavits filed in support of said supplemental motion, as follows:

"THE STATE OF TEXAS, }
  "COUNTY OF WASHINGTON. }
   "Before me, R. J. Swearingen, a Notary Public in and for said State and County, on this day personally appeared Dorsey Taylor, known to me to be the person whose name is signed hereto, who being duly sworn, deposes and says: 'That some time between the 1st and 10th day of December, 1893, I went to the home of Jay Owens, in Williamson County, Texas, and remained there until about the middle of March, 1894; that during the time I was staying there nor at any other time I have seen nothing that tended to show that there was any improper relations between Jay Owens and his daughter, Pearl Owens. I never saw Jay Owens in the act of copulating with said Pearl Owens. Sam Owens never called me to witness anything of the kind. He never called me up to a window to witness any act of the kind by the said Jay Owens towards his daughter, Pearl Owens; and I never saw anything during the time I was there, from the first part of December, 1893, to the middle of March, 1894, that would cause the least suspicion that any improper relations existed between the said Jay Owens and Pearl Owens. I left the home of Jay Owens about the middle of March, 1894, and have not since returned, except some time during the latter part of July, 1894, when I was passing through Williamson County, and stayed one night at the home of Jay Owens, and that night I saw nothing that would tend to show any improper relations existing between the said Jay Owens and Pearl Owens, his daughter.

                                            " 'DORSEY TAYLOR.'

"Sworn to and subscribed before me this 7th day of August, 1895.
                                            "R. J. SWEARINGEN,
        [L. S.]              "Notary Public Washington County, Texas."

"THE STATE OF TEXAS, }
  "COUNTY OF WASHINGTON. }
   "Before me, R. J. Swearingen, a Notary Public in and for said State and county, on this day personally appeared Dr. J. R. Williamson, well known to me, who being duly sworn, upon oath deposes and says: 'That on the 3d day of August, 1895, Dorsey Taylor had his ankle dislocated, and is now unable to be removed from his room.

                                            " 'J. R. WILLIAMSON.'

"Sworn to and subscribed before me this 7th day of August, 1895.
                                            "R. J. SWEARINGEN,
        [L. S.]              "Notary Public, Washington County, Texas."

[No briefs for appellant have come to the hands of the Reporter.]

*Mann. Trice*, Assistant Attorney-General, for the State.—Appellant contends that the court erred in overruling his motion for a new trial, and in overruling his motion to quash the indictment.

1.   The court did not err in overruling the motion for a new trial, based on the ground of newly discovered evidence.   For if it be con- ceded that the absent witness, Doss Taylor, would have denied ever having seen appellant have carnal intercourse with Pearl Owens, this would not negative the fact that he at no time had such intercourse with her.   The act of intercourse alleged to have occurred early in the morning between Xmas, 1894, and New Year, 1895, is of itself suffi- cient to predicate this verdict on.   In addition to this, there are other facts alleged to have been committed in the corn field and in the house at night, any one of which would be sufficient to sustain this verdict. In this connection it will be observed that Pearl Owens says that Doss Taylor did not see them on the morning between Xmas and New Year's day, neither does she say that he witnessed their act of carnal inter- course at any but one time.   The act of carnal intercourse in the morning between Xmas and New Year's day, according to her testi- mony, was accomplished by force.   This is corroborated by the tes- timony of Sam Owens, as follows:   "Papa and sister were on the bed. Papa was on top of sister, he was moving his body up and down.   Papa said, 'Lay still, God damn you, or I will choke you.'"   It is not sought to contradict this testimony by that of the absent witness, neither is it sought to negative other acts of carnal intercourse accomplished by vio- lence, threats and putting in fear, as shown by the record.   Then there being no pretense that the absent witness would contradict all these criminal acts, it is respectfully submitted that the testimony is not of such a material nature as to warrant a reversal.   "In order to constitute reversible error on appeal, it must appear that the absent testimony was material and probably true, and it must also appear that if the absent testimony had been before the jury, a verdict more favorable to the de- fendant would have been rendered."   Pruitt v. State, 30 Tex. Crim. App., 156.

The affidavit of Mr. Robertson, stating that he had met a boy who claimed to be the son of J. Owens, and who told him that his father was not guilty, does not set up any matter which would have justified the court in granting a new trial, because it appears from the record that the witness, Sam Owens, J. Owens' son, admitted on the stand that he told Mr. Makemson, in substance, the same things set out in Robertson's affidavit.   He explains it, by saying that he was not under oath at the time he made these statements, and that the statements so made were not true, but that the statements he then made under oath before the jury were true.   It is obvious that if Mr. Robertson had been present on the trial, this testimony could not have been used, as the witness did not deny making the statements.

2.   Appellant's objection that the indictment charges separate and distinct offenses alleged to have been committed at different times, is

fully met by the following rule: "There may be a joinder of several offenses of the same class or kind growing out of the same transaction, although committed at different times, if set out in several distinct counts, and such joinder is not ground for demurrer or arrest of judgment." United States v. Wentworth, 11 Fed. Rep., 52; United States v. O'Callahan, 6 McLean, 596; Am. and Eng. Ency. of Law, Vol. 4, p. 756.

Rape and incest belong to the same family of crime, although the punishment may be different.

Where the indictment contains proper averments, a conviction for incest may be had on an indictment for rape. Com. v. Goodhue, 2 Metcalf, 193.

"The same person may be innocent of rape, while in the same transaction he might be guilty of incest." Stewart v. State, ante p. 174.

But one criminal transaction forms the basis for the prosecution in this case, to-wit: Sexual intercourse by appellant with Pearl Owens. In such case, if the varying counts in the indictment comprehend one transaction, their joinder and one trial on all is not objectionable. This is true, although the punishment for separate offenses, growing out of the same transaction, may be different. 1 Whar. Prac. and Pleas. p. 31; Johnson v. State, 29 Alabama, 62; Ester v. State, 55 Georgia, 131; Baker v. State, 4 Pike, 56; Bish. New Crim. Proc., Sec. 453.

In this case the State elected to try upon the first and fourth counts of the indictment, the first count charging incest, and the fourth count charging rape. Appellant was duly arraigned as required in cases where a capital punishment may be inflicted. Both offenses being based upon essentially the same transaction, there was no error in the joinder of the two in separate counts, for it is obvious that such joinder was simply designed and calculated to adapt the pleadings to the different aspects which the evidence on the trial might present. This practice is not only permissible, but is commended by the courts. Keeler v. State, 15 Tex. Crim. App., 111, 20 Tex. Crim. App., 574; Storrs v. State, 3 Mo., 9; United States v. Dickson, 3 McLean, 325, 30 Tex. Crim. App., 623.

The evidence is simply sufficient to sustain the verdict, the charge fairly presents the law, and it is submitted that the judgment should be affirmed.

HENDERSON, JUDGE.—The appellant in this case was tried under an indictment in four counts, two of which charged him with rape, and the other two with incest. He was convicted under the count charging him with rape, and his punishment assessed at death. From the judgment of the lower court he prosecutes this appeal. Appellant filed a motion to quash the indictment on the ground that it charged separate and distinct felonies, and was duplicitous, because the counts in the indictment alleged the offenses to have been committed at different and distinct times. There are four counts in the indictment, the first two of which charged incest, and the third and fourth charged rape. At the

trial the State dismissed the second and third counts, and prosecuted the defendant on the first and fourth counts. The first count charged, "That on the 30th day of June, 1895, the defendant did unlawfully and carnally know Pearl Owens, the said Pearl Owens being then and there the daughter of him, the said Jay Owens." The fourth count charged, "That the defendant on said 30th day of June, 1895, did then and there, unlawfully, in and upon Pearl Owens, a female child, make an assault, and did then and there, by threats and force, and without the consent of the said Pearl Owens, ravish and have carnal knowledge of the said Pearl Owens," etc. The two offenses are charged in distinct counts, and there is no duplicity in the charge. Although the offenses involve different punishments, they are of the same character; and if, in a case of this character, the proof had failed to show force sufficient to constitute the offense of rape, but had shown carnal intercourse between the parties, on proof of relationship, the party could be convicted of incest. Mr. Bishop says (Code Crim. Proc., Vol. 2, § 975): "An indictment in two counts, one for rape, and the other for assault to commit rape, is not objectionable as charging two offenses." And it occurs to us that the same principle is applicable to the offenses of rape and incest. The same author above quoted says: "If the offenses are repugnant, or the trial or the judgment is incongruous, and calculated to deprive the defendant of his rights, or embarrass the court, the joinder will not be permitted. It is allowed where the offenses are in a kindred line, or where several counts are introduced for the purpose of meeting the evidence as it may transpire on the trial, all of the counts being for the same offense." Id., § 446. And in a Massachusetts case it is held, "That the same count can include rape and incest, and the defendant can be convicted for either." See Com. v. Goodhue, 2 Metc., 193. In our opinion, there is no repugnance between the two counts in this indictment. They are both predicated upon the same transaction, and the court did not err in refusing to quash the indictment. Nor, in this case, can the appellant complain of the mode of trial. He was arraigned as for a capital felony, and tried by a special venire. This mode was applicable to one of the counts in the indictment. It was more liberal, in that it gave him more challenges than is allowed by law under the count for incest; and of this he would have no more right to complain than would a defendant charged with murder, and convicted of manslaughter, be heard to urge that he ought not to have been tried by a special venire.

In this case the appellant assigns as error the action of the court in permitting the State, on cross-examination of the defendant's witness, Pate Chapman, to ask said witness if he, on a certain occasion, told one Bill Ratliff that the defendant, Owens, was going to pay witness three horses to get him out," and, on his answering that he did not, then permitting the State to introduce the said Bill Ratliff, and to prove by him that said Chapman did tell him that the defendant had promised him three horses to get him cleared. Appellant saved an exception to this testimony. It will be observed that this testimony was adducted

on cross-examination of the defendant's witness by the State. If admissible at all, it was only admissible as going to discredit the defendant's witness, Chapman, and should have been accordingly limited by the court to that purpose alone. We have examined the charge of the court in that connection, and fail to find that it was so limited. If the State could have proven that the defendant had suborned, or attempted to suborn, the witness Chapman to testify on his behalf, it would have been highly criminative evidence against him; but, instead of proving the same by the witness Chapman (who must be regarded as the State's witness on this point), the State proved the contrary, and, as far as the defendant was concerned, the testimony did not touch him in this regard, but was totally disconnected from him. If it was admissible at all, as stated before, it could have only been used for the purpose of discrediting the witness, Chapman, and it was the duty of the court to carefully guard and limit this testimony to the only purpose for which it could have been introduced. As was said in Thompson v. State, 29 Tex. Crim. App., 208: "The charge failed to instruct the jury that said testimony was admitted for the sole purpose of impeaching, and could be considered for that purpose only. It was not criminative evidence against the defendant, but, in the absence of an express instruction to the jury restricting their consideration of it to the sole purpose for which it was admitted, they may have regarded it as criminative of the defendant." See Paris v. State, ante p. 82. The appellant in this case filed a supplemental motion for a new trial on the ground of newly discovered evidence. On the trial of the case, Sam Owens, the brother of the prosecutrix, testified that he, on one occasion, saw the defendant, his father, copulating with the prosecutrix, Pearl Owens, and that he called one Dorsey Taylor, and pointed out to him the parties in the act of carnal intercourse. The application shows that this was the first time that appellant had knowledge of this transaction alleged to have been witnessed both by Sam Owens and Dorsey Taylor. Taylor was not present at the trial, though it appears that both the State and defendant had made efforts to procure his attendance prior to the trial, but without success, neither the State nor the defendant having been able to ascertain his whereabouts. The defendant avers that his purpose in desiring the attendance of said Taylor was to prove that during a part of the year 1893 he lived on the place of the defendant, and that defendant was kind to his family, and that it was not for the purpose of disproving the fact that he saw this defendant having intercourse with Pearl Owens. After the trial the appellant renewed his efforts to ascertain the whereabouts of said Dorsey Taylor, and at length succeeded in locating him at Brenham, in Washington County, and procured his affidavit denying in toto the fact, as testified to by Sam Owens, that he was present and a witness to the act of sexual intercourse between defendant and the prosecutrix on the occasion testified to by said Sam Owens. Ordinarily, it would have been the duty of the defendant, as soon as he was apprised of the testimony of Sam Owens, on the trial, to have then craved a post-

ponement of the case until absent witnesses could be brought in, but the record in this case shows that a postponement would have been useless, because the defendant had, previous to the trial, used all proper diligence to discover the witness, Taylor; and the court, under the circumstances, could not have been expected to entertain a motion to postpone the case for the appearance of the said witness. Nor was it in the power of the appellant to know that he could have availed himself of the testimony of the said witness, Taylor, in contradiction of the evidence of Sam Owens, if he were present, because he shows conclusively that he had not previously been apprised of the nature of Sam Owens' testimony as to said transaction, and consequently he could not know what would be the testimony of the said Taylor, in that regard. The testimony of the said Sam Owens was upon a material issue in the case, and it went to the jury with the supperadded force that not only he saw the transaction, but that another absent witness was also present and saw it. As stated before, the affidavit of the witness, Taylor, expressly and pointedly denies that he saw said act of carnal intercourse. The State's testimony upon this point was not previously known to appellant, and could not have been known by the use of any amount of diligence, nor was it within his power, by the use of any reasonable diligence, to rebut this damaging testimony at the trial. It was shown subsequent to the trial, in the application by appellant for a new trial, that said witness, Taylor, would rebut and contradict the State's evidence as to said transaction. The court below ought to have allowed the appellant a new trial. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*