## CARL WINFREY v. THE STATE.

### No. 1969.   Decided March 23, 1900.

### Motion for Rehearing Decided May 9, 1900.

**1. Charge of Court—Impeachment of Witness—Limiting and Restricting.**

In a felony case a charge when required must be in writing; a verbal one will not suffice. But where it is apparent that testimony can be used for no other purpose than the impeachment of a witness it is not necessary for the court to limit and restrict it to that purpose in the written charge. (But see infra, paragraph 5.)

**2. Dying Declarations—Declarant's Consciousness of His Approaching Death.**

The statute does not specify the time when, nor the manner or form in which the deceased shall have declared his belief of his impending death; and the fact that such declaration was made by him subsequent to his statement relative to facts of the difficulty and how he was mortally wounded, does not invalidate his dying declarations nor render them inadmissible in evidence.

**3. Same.**

Statements not admissible made by deceased in his dying declaration do not constitute reversible error where their admission could not have affected the defendant injuriously. (But see infra, paragraph 6.)

**4. Same.**

There is no merit in an objection to the testimony of a witness to the effect that as deceased was being removed from his bed to the operating table by physicians he said, "O, I know I will never see the light again."

#### ON MOTION FOR REHEARING.

**5. Impeachment of Witness—Charge Limiting and Restricting.**

Where a witness has been impeached by proof of contradictory statements, if such impeaching contradictory statements be of a character incriminative of defendant, and might exercise a strong, undue, or improper influence upon the jury as to the main issue injurious and prejudicial to defendant, it is error for the court to fail or refuse to limit and restrict its effect in the charge. See opinion for impeaching evidence which the court erred in not limiting and restricting.

**6. Dying Declarations—Statements Inadmissible.**

A statement by deceased as to his acts, doings, and intention prior to the homicide, and what he had told defendant relative to his visiting his stepdaughter, were inadmissible as parts of his dying declaration.

APPEAL from the District Court of Bowie. Tried below before Hon. J. M. TALBOT.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Ben Miller, on the 16th day of September, 1899, by shooting him with a pistol. All the essential facts pertaining to the killing are concisely but sufficiently stated in the first opinion below.

*W. L. Estes* and *John J. King*, for appellant, filed an able brief, and on the motion for rehearing a most able and elaborate argument which, but for its length and the difficulty of condensing it, would be reproduced in its entirety.

*Rob't A. John*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years.

He introduced Miss Anna Stanphill, who testified: That when the difficulty came up between her stepfather (deceased) and her lover (defendant) they were in the sitting room, on the west side of the hall. That they were not expecting deceased until about 6 o'clock, or later. Unexpectedly, he arrived about 5 o'clock. That he ran up the steps with his hatchet in hand, and "I said to Carl, 'There comes papa, with his hatchet.'" He cursed and abused defendant, and threw the hatchet at him. That she heard three shots. Saw defendant come running around the yard from the front on the outside, and she, at his request, carried him his cap, which he had left in the house. On cross-examination the district attorney asked her if she did not, on the evening subsequent to the difficulty, at the residence of deceased, state to C. E. McConnell that defendant was sitting on the bed, and had been playing his guitar, when deceased came running into the room, and threw a stick of wood and hatchet at Carl before he could get up. She denied making the statement. She further denied she and defendant had been in the bedroom that evening, but had been in the sitting room, on the west side of the hall, during defendant's visit. For the purpose of impeaching her, McConnell was introduced, and stated that on Saturday night, after Miller had been shot by defendant, he was at Miller's residence, and saw witness Stanphill, and asked her how many times defendant shot, and she stated he only shot deceased once, and that was in the hip.

He then asked her where they were when deceased came that evening. She stated Carl was sitting on the edge of the bed, and had been playing his guitar, when Miller came running into the room, and threw a stick of stovewood and hatchet at Carl before he could get up off the bed. Objection is urged in the motion for new trial because the court failed to limit the effect of this testimony. The court states, however, he verbally instructed the jury that the evidence was only offered to impeach and contradict the witness Stanphill. It is true that where a charge is required to be given the jury in a felony case it must be in writing; a verbal instruction will not suffice. Thompson v. State, 29 Texas Crim. App., 208; Owens v. State, 35 Texas Crim. Rep., 351; Paris v. State, 35 Texas Crim. Rep., 95. But it was not necessary for the court to limit the effect of this testimony to impeachment. Where it is apparent that the testimony can be used for no other purpose than that of impeachment, it is not necessary for the court to limit the purpose of the same in its charge. Wilson v. State, 37 Texas Crim. Rep., 373; Franklin v. State, 38 Texas Crim. Rep., 346; Moseley v. State, 36 Texas Crim. Rep., 578. As we understand it, this testimony could be used by the jury for no other purpose than impeachment. If it could be used otherwise, either as an incriminating fact, or to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to appellant, then it would have been the duty of the court to limit and restrict its effect in his charge, so that no unwarranted results could ensue. These two rules are recognized throughout the decisions in this State. We do not believe this testimony could have been used by the jury for any purpose other than impeachment. Hence there was no error in the failure of the court to limit and restrict the testimony.

Two bills of exception were reserved to the action of the court permitting the introduction of dying declarations of Miller. It was generally objected that Miller was not conscious of approaching death, and had no hope of recovery. The two bills, in our judgment, made it apparent that deceased had no hope of recovery at the time he made the statement; and the mere fact that his statements to his effect were made, in the first instance, subsequent to making the statement, does not take away its probative force. The statute does not specify the time when nor the manner in which this fact shall be made to appear, provided it does sufficiently appear from the statement of the deceased that he is conscious of approaching death, and has no hope of recovery. No set form of words should be required in a dying declaration to show that defendant was under belief of speedily impending death. The court must draw a rational conclusion from all that was said, taken in connection with such surrounding circumstances as must have been known to the declarant, as to whether said declarant was in such condition of mind as would render his declaration competent. See State v. Johnson, 7 Am. Crim. Rep., 366; Reynolds v. State, 4

Am. Crim. Rep., 152; Payne v. State, 4 Am.. Crim. Rep., 155, and note (same case, 61 Miss., 161); Railing v. Commonwealth (Pa. St.), 6 Am. Crim. Rep., 7, and note (same case, 1 Atl. Rep., 314); State v. Cantieny (Minn.), 6 Am. Crim. Rep., 418, and note (same case, 24 N. W. Rep., 458). We think the bill of exceptions sufficiently shows that deceased was laboring under the impression of impending death.

Defendant, however, further objected to the following statements: (1) "I was feeling unwell this evening, and quit my work about 5 o'clock, and came home. I brought my hatchet with me, which was loose on the handle, intending, when I got home, to make a wedge, and put in it." As an original proposition, we believe this testimony was not admissible as dying declarations. That portion of it which relates to the hatchet might have been introduceable in rebuttal of the evidence relied upon by defendant, showing an attack made by deceased with the hatchet. Defendant objected secondly to that portion of said statement which is as follows: "I had told Carl Winfrey [defendant] that I wanted him to stay away from my house. He knew that I objected to him coming. I had no objections to his coming to see Annie [meaning Annie Stanphill, his stepdaughter] if he would come like any other man." Perhaps this was not admissible as dying declarations, but we do not think it could have affected appellant injuriously in this case, because he himself and Mrs. Miller and Miss Stanphill testified to the same fact. He also reserved an exception to the action of the court permiting witness Simmons to testify to the statement of deceased, "Oh, I know I will never see the light again." This statement was made while deceased was being removed from his bed to the operating table, to be operated upon by the physicians. There is no merit in this bill. There being no error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

(May 9, 1900.)

DAVIDSON, PRESIDING JUDGE.—During our recent Dallas term the judgment in this case was affirmed. Appellant, in his motion for rehearing, relies upon two alleged mistakes committed in said affirmance: First, error in holding the trial judge was correct in not limiting by a written charge to the jury the effect of McConnell's testimony impeaching the witness Miss Stanphill; and, second, error in not reversing the judgment because of the admission as dying declarations of certain statements of deceased. We have carefully reviewed the record, the opinion, and motion for rehearing, and are of opinion that both grounds of the motion are well taken. We deem it unnecessary to repeat here the testimony urged as error, for it is set out in the original opinion. We again say that, where a charge is required to be given the jury in a felony case, it must be in writing. A verbal instruction will not

suffice. Where the impeaching testimony could be used for any purpose injurious to defendant or as a criminating fact by the jury, it is the duty of the court to limit and restrict the effect of such impeaching evidence in his charge, so that an unwarranted verdict may not follow. After a careful review of the testimony, we believe the statement of McConnell as to the contradictory statements by Miss Stanphill could be used injuriously to appellant. Miss Stanphill and defendant both testified they were in the sitting room or parlor when deceased came upon them, armed with a hatchet. Deceased objected to defendant visiting his stepdaughter unless he would do so as did other men. The contradictory statements imputed to Miss Stanphill showed that at the time deceased came upon defendant and herself they were in the bedroom, and not in the sitting room, and appellant was getting up from the bed, where he was as deceased approached with a stick of wood and hatchet. A more careful scrutiny of the evidence would indicate that the jury could, and perhaps did, use the intimation of deceased that appellant was not visiting his daughter as other men, that there was some improper relation ·between them; and this is strengthened by the fact that, if her contradictory statement is true, they were in the bedroom, and appellant on the bed, when deceased came upon them. The fact that they were in the bedroom tended to strengthen the statement of deceased, and tended to convey the idea that this improper relation did exist. If the jury believed this, or were authorized to believe the imputed statement of Miss Stanphill to McConnell, there was some reason for the correctness of the deceased's statement; and this may have operated to convince the jury that appellant was taking advantage of his relation to Miss Stanphill to bring disgrace upon·the stepdaughter and family of deceased. This testimony could be further used not only for the purpose of contradicting Miss Stanphill, and impressing the jury with the impropriety of his relations to her, but it contradicted the testimony of deceased to the effect they were occupying the sitting room and not the bedroom. Her contradictory statements could not be used for the purpose of contradicting appellant, nor for the purpose of showing a different transaction than that testified by him; in other words, it could only be used for the purpose of showing the unworthiness of the witness, and to discredit her testimony. As stated in the original opinion, "Where it is apparent that the testimony can be used for no other purpose than that of impeachment, it is not necessary for the court to limit the purpose of the same in its charge." If it could be used otherwise, either as an incriminating fact, or to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to appellant, then it would have been the duty of the court to limit and restrict its effect in his charge so that no unwarranted results could ensue." We believe the failure of the court to limit this was in disregard of the established rules governing procedure in the trials of persons accused of crime, and we desire to

emphasize what has heretofore been said, to wit: "To disregard the established rules of law governing the procedure in the trials of accused persons would be a denial of any hope of justice, would lead to swift conviction regardless of the guilt or innocence of the accused, inflict disgrace upon honorable men and pure women untainted with crime, and set at naught the safeguards guaranteed by the Bill of Rights, and bring about a subversion of the fundamental theory of the due administration of justice." Again: "If courts could feel themselves at liberty to depart from principles and established rules in order to hasten the punishment of even great offenders, such departure might soon result in the destruction of those safeguards which, in accordance with the genius of free government, had been provided for the lives and liberty of men. * * * The substantial purposes of justice are best subserved by adhering strictly to technical long and well established rules, and to the plain requirements of the statutes." Whether appellant be guilty or innocent of murder, or of some culpable phase of homicide, would not debar him of the right to be tried according to the rules governing procedure in the trial of accused persons or of evidence applicable to the issues developed on the trial. In regard to those statements criticised in the original opinion admitted as portions of the dying declaration of deceased, and particularly pointed out in the bill of exceptions, as well as the opinion, we desire to say they were not dying declarations, and were not admissible as such. We were of opinion, as stated in the original opinion, that under the circumstances perhaps they were not injurious. Upon a more careful review of the matter, we are inclined to believe we were in error. The court, upon another trial, however, will exclude those portions of the statement of deceased criticised and used as dying declarations, and the question will thus pass out of the case. For the errors indicated, the motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Motion granted. Reversed and remanded.*