## EVA BRITTAIN v. THE STATE.

### No. 3175.  Decided February 15, 1905.

**1.—Manslaughter—Res Gestae—Declaration of Defendant.**

Where defendant proposed to introduce the declarations between herself and
a witness which occurred five or six hours after the homicide for which she
was being tried, to the effect that she told witness that deceased had cut her
all to pieces; in connection with her physical condition, there was no error in
excluding this testimony as no part of the res gestæ, the court having per-
mitted the witness to testify as to defendant's physical condition.

**2.—Same—Evidence—Cross-Examination—Husband and Wife.**

Where defendant had proved that witness and herself were husband and
wife, it was legitimate cross-examination to interrogate witness as to the
particulars of said marriage, when, where and how it occurred; and being
admissible and competent testimony under the circumstances of the case, after
it had been admitted, the State could use the same for any legitimate purpose
connected with the case.

**3.—Same—Evidence—Motive.**

Where the circumstances of the case showed that the relation of defendant
and the witness H. was legitimate matter of proof, and the theory of the State
was that defendant killed deceased from jealousy against her because of her
relations to said witness, H., it was legitimate to permit the State to prove
by defendant on cross-examination that she had recently upon one or two
occasions prior to the homicide and to her marriage to H. had carnal inter-
course with him.

**4.—Same—Evidence—Motive—Credibility of Witness.**

It was legitimate for the State on cross-examination of defendant to prove
that she had formerly, long anterior to the homicide, been an inmate of a
certain house of prostitution where the homicide occurred· for which she was
being tried; that she had there received men and had carnal intercourse with
them; and sometime prior to the homicide had been mistress of one H., now

the husband of defendant; for the purpose of affecting her credibility and of showing motive and ill will of defendant against deceased because of defendant's jealousy of deceased on account of finding deceased with said H., on the morning of said homicide. It was not necessary for the court to limit the testimony of her being a prostitute, as the jury were not likely to appropriate the same for any other purpose than affecting defendant's credibility.

**5.—Same—Charge of Court—Self-Defense.**

Where the court in defining the law of self-defense used the word "great," instead of "serious" bodily injury, but in applying the law to the facts used the correct term serious bodily injury, appellant could not complain.

**6.—Same.**

Where the testimony was conflicting as to defendant's mission in going to deceased's room, and the court charged the jury that it was immaterial for what purpose she went there, that if deceased made or was about to make an attack on her, which from the manner and character of it and the relative strength of the parties, and the defendant's knowledge of the character and disposition of deceased, caused her to have a reasonable expectation or fear of death or serious bodily injury and she killed deceased, to find defendant not guilty, there was no error.

**7.—Same—Charge of Court—Self-Defense.**

Where the court charged the jury that defendant was authorized to act on an attack made or about to be made, there was no · error on this enlargement of defendant's rights of self-defense, even if it be conceded that there was no testimony tending to show that defendant may have acted on an attack about to be made.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*O'Brien, John & O'Brien,* for appellant.—Where one spouse is introduced as a witness in behalf of the other spouse, the cross-examination of said witness must be confined strictly to the matters about which the witness testified in direct examination. Washington v. State, 17 Texas Crim. App., 197; Johnson v. State, 28 Texas Crim. App., 17; Davis v. State, 23 Texas Crim. App., 210.

A defendant testifying in her own behalf as witness cannot be compelled to answer when the answer will subject the witness to a penalty or will have a tendency to degrade the moral character, unless the evidence be directly upon the issue and of this the witness is the judge. Donaldson v. State, 10 Texas Crim. App., 307; Thompson v. State, 38 Texas Crim. Rep., 335; Floyd v. State, 7 Texas Rep., 215; Baker v. Com., 50 S. W. Rep., 54.

The accused character only became an issue when made so in the first instance by herself and the opposite party could inquire on cross-examination if defendant was a "common prostitute" and could not compel her to testify to the specific acts of immorality. Underhill Criminal Evidence, pages 81–103; Hall v. State, 66 S. W. Rep., 786; Thompson v. State, 38 Texas Crim. Rep., 335; Brittan v. State, 36 Texas Crim. Rep., 406.

If it be admited that the evidence was admissible showing the avocation and character of the defendant the jury should have been cautioned in the charge to consider it only on the issue of her credibility as a witness, the rule being whenever extraneous evidence of this kind is admitted, if the same can be used by the jury and for any other purpose than the purpose that it is alone admissible, then the court should limit same. Thompson v. State, 38 Texas Crim. Rep., 335; Scoville v. State, 77 S. W. Rep., 792; Winfrey v. State, 56 S. W. Rep., 919.

In the charge of the court, the jury should have been told, as a part of the doctrine of self-defense, that the appellant had a right to go to the house of the deceased upon a peaceful mission, and that if she went upon a peaceful mission, the fact that the homicide occurred upon the premises of the deceased, should not be used as a circumstance against her. Hall v. State, 64 S. W. Rep., 248; Bonnard v. State, 25 Texas Crim. App., 173; Thornton v. State, 65 S. W. Rep., 1105; Rollor v. State, 44 S. W. Rep., 496.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter and her punishment assessed at two years confinement in the penitentiary; hence this appeal.

The facts show that appellant and deceased were both lewd women. The State's theory, which is supported by some testimony, is to the effect: that both were enamored of one Sonnie Hicks. On the morning in question appellant having heard by some means that Sonnie was in bed with deceased, Minnie Smith, went to her room and found Sonnie and Minnie in bed together. Sonnie immediately jumped up and ran out of the door, halloaing as he ran, "run and part them women." Witnesses who were nearby heard appellant say, "raise you son of a bitch; I have caught you at last." A scuffle was heard in the room; several parties immediately rushed in there and saw appellant and deceased struggling. Appellant was cutting deceased with a large knife. Babe Hamilton, who was an inmate of the "Divvy," a bawdy house, where the homicide occurred, parted them. Deceased reached for a lamp on the table or dresser nearby, and started toward appellant. Witness Hamilton told deceased she was cut all to pieces and that appellant had a knife and she could not fight her. Appellant then retired from the room, saying as she went out, in reply to some one who called to her that she had cut the woman to death. "I intended to kill the bitch." She had a knife in her hand at that time, the blade of which was four or five inches long. Deceased expired directly afterwards. No weapon was found on her person or in the room. She was in her night clothes.

Appellant's theory was that she went to the house in question to get two dollars which she had loaned Sonnie Hicks, as she was intending to leave Beaumont that morning and go to Louisiana. When she went in, she said to Sonnie, "Oh, I have found you. This is the way you've

got of bringing my money back." Sonnie passed out of the room. Deceased then got up and said, "You have got your gall, you bitch, to come in my room when I've got a man in here." And began reaching under the pillow and got a pocket knife, the blade looked like a barlow. She then grabbed appellant. Appellant said, "I am not after you; I am after my money." Deceased then began cutting appellant. She stepped back to the wall and kicked deceased in the stomach and deceased's knife fell on the floor. Both grabbed for it, but appellant got it. Deceased began dragging appellant towards the dresser, where there was a pair of scissors, and appellant began cutting her, and cut her two or three times. Babe Hamilton came in and parted them. The fight occurred about 7 or 8 o'clock in the morning. Appellant then left the premises, went to a lumber yard and stayed there until 12 o'clock, when she returned and gave herself up to an officer. Some of the stabs in deceased were in the breast in the region of the heart, which organ was evidently penetrated, causing her death. Several cuts were found on the hands of appellant when she returned and surrendered to the officer. She claimed that these were made by deceased before she got the knife away from her. Appellant claims that, as she went away she threw the knife down by one Williams, who picked it up. Williams denied this. This is a sufficient statement of the case in order to discuss the points raised.

By the first bill of exceptions appellant challenges the action of the court refusing to permit her to introduce George Tevis as a witness to testify, that when appellant returned and surrendered to him, between 1 and 2 o'clock (the homicide having occurred between 7 and 8 o'clock on the morning of that day) he noticed her clothing was cut in several places; that she was wounded about the head, face and on her hands, which seemed to be knife cuts; that she seemed to be suffering from them. Thereupon defendant as part of the res gestæ of her then physical condition, asked said witness what he said to the defendant, and what was her reply. If witness had been permitted to answer he would have testified that she replied, that Minnie (meaning deceased) had cut her all to pieces. The State objected to this question and the answer sought to be elicited upon the ground, that the same was not a part of the res gestæ, but was self-serving. Appellant insisted that the same was a part of the res gestæ. The court explains this bill, by saying, "That Tevis was permitted to testify to the physical condition of defendant, and to describe fully the marks of violence upon her person and clothing, but as all the evidence showed that the homicide occurred early in the morning, somewhere between 6 and 8 o'clock, and the witness Tevis did not see defendant until some five hours later, the court did not think that the statements of the defendant to said witness, after so long a time, were admissible as res gestæ." In this ruling we believe the court was correct. We are aware there are a number of cases which extend the rule as to the admissibility of res gestæ beyond the time of the transaction itself. But we know of no case which extends the rule

some four or five hours after the event. After the homicide appellant had concealed herself in a lumber yard for a considerable length of time. While it was competent to prove her condition then as to any wounds appearing on her person, we do not believe it was competent to prove as a part of the res gestæ what was said in regard to how she received said wounds.

Appellant reserved a bill of exceptions, to the effect: "That defendant introduced Sonnie Hicks as a witness, and upon direct examination, the only fact in reference to their marital relations that was elicited, was that witness and defendant were husband and wife. Whereupon the county attorney, upon cross-examination of said witness, asked him? 'When did you and defendant marry; is it not true that defendant married you after the homicide?' Defendant objected on the ground that Hicks being the husband of appellant, the State in cross-examining could not prove any other fact not germane or in legitimate cross-examination, of facts elicited by defendant on direct examination." We accept the rule laid down by appellant, but hold that after appellant had proved that witness and herself were husband and wife, it was legitimate cross-examination to interrogate witness as to the particulars of said marriage, when, where and how it occurred; and being admissible and competent testimony under the circumstances here shown, after it had been admitted, the State could use the same for any legitimate purpose connected with the case.

When appellant was testifying in her own behalf, the State was permitted to prove that witness had recently, upon one or two occasions prior to the homicide and to her marriage to Sonnie Hicks, had carnal intercourse with the said Hicks. The State introduced this evidence in order to show a state of ill feeling and jealousy existing on the part of appellant toward Minnie Smith on account of Sonnie Hicks. Appellant objected on the ground that the same was an effort to prove the bad character of defendant when she had not placed the same in issue; that the testimony tended to expose appellant to disgrace and criminal prosecution; that said acts of intercourse were isolated, and the specific acts of immorality not involving a crime and not showing the vocation of defendant, were therefore not admissible. We do not believe the objection that the testimony would tend to discredit appellant or subject her to a criminal prosecution is well taken. This was not proof that they were living together and having carnal intercourse, nor does it prove habitual carnal intercourse with each other without living together. So it could not have been fornication. The circumstances of this case show that the relation of appellant and Sonnie Hicks was a legitimate matter of proof. The State's theory being that appellant killed deceased on account of jealousy against her, because of her relations with Sonnie Hicks. Any fact that would tend to prove the intimate relations existing between Sonnie Hicks and appellant was admissible.

Appellant also reserved an exception to the following testimony: "On the cross-examination of appellant, who testified on her own behalf, the

State was permitted to prove that she had formerly, long anterior to the homicide, been an inmate of a house of prostitution, known as the "Divvy," where the homicide occurred; and that she had in said house received the attentions of men and had carnal intercourse with them; and further that sometime previous to the homicide, she had been the mistress and kept woman of witness Sonnie Hicks, now the husband of defendant. Said evidence was tendered by the State for the purpose of affecting the credibility of defendant, and for the purpose of showing motive and ill will of defendant against deceased, by showing she was jealous of deceased and enraged toward her on the morning of the homicide by finding Sonnie Hicks with deceased. This was objected to because it was not proper for the State to prove the bad character of defendant, when she had not placed it in issue, and tended to expose defendant to disgrace and to criminal prosecution, and was therefore privileged." We believe the fact of her relations with Sonnie Hicks were provable for the same reasons heretofore shown as to the preceding bill of exceptions. It is held that it is proper to prove that a witness is a prostitute on her cross-examination; and that such evidence is admissible in general as showing the vocation of the witness McCray v. State, 38 Texas Crim. Rep., 609; Hall v. State, 43 Texas Crim. Rep., 480; Underhill Cr. Ev., sec. 245. The proof here elicited as to appellant's vocation was by indirection; that is, the general question was not propounded of witness that she was a prostitute, but the facts were proven which constituted her such. She was asked if she had not previously been an inmate of a house of ill-fame, and if she had not received and fornicated with men there. She answered these questions in the affirmative, which in effect rendered her a prostitute. There is no proof, as insisted, of specific acts; no particular person is mentioned in connection with the acts of carnal intercourse, but she was asked and answered, she received men generally for that purpose. Underhill, supra, says, "it is admissible to prove the vocation of a witness, as that he is a farmer, merchant, a gambler," etc. As has been seen the fact that a witness is a common prostitute, can be proven in this State, although such fact may tend to bring her into disrepute.

Appellant strenuously insists that, if this character of testimony is admissible, it was the duty of the court to guard the jury against its improper use; that is, to limit the same to her credibility only. In Wilson v. State, 37 Texas Crim. Rep., 373, the rule is stated thus: "The general rule is that whenever extraneous matter is introduced in evidence for a specific purpose incidentally but which is not admissible directly to prove the main issue and which might tend, if not explained, to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to the right of the party, then it becomes the imperative duty of the court in its charge to so limit and restrict it as that such unwarranted results cannot ensue." It is also stated that the converse of this is equally true, that is, "where the testimony can be used for no other purpose than that of impeachment, it is not necessary

for the court to limit the purpose of the same in its charge." Evidently this was not proof of another crime which the jury might use against appellant in order to enhance her punishment. A number of cases indicate that where another crime is proven against a witness which is collateral to the offense then being tried, it is the duty of the court to so limit the same as that the jury will not appropriate it for some other purpose. However, in a number of cases it is held that where such evidence of collateral matters cannot be appropriated by the jury to some other purpose injurious to appellant besides impeachment, that the failure to limit such testimony will not afford cause for reversal. Franklin v. State, 38 Texas Crim. Rep., 346; Moseley v. State, 36 Texas Crim. Rep., 578; Harris v. State, 34 Texas Crim. Rep., 494; McGee v. State, 43 S. W. Rep., 512; Winfrey v. State, 56 S. W. Rep., 919. We can recall no case where the evidence showed that the witness was a common prostitute, although this witness might be the defendant, where the court has been required to limit the testimony to the credibility of the witness. If a case of this character is reversible upon that proposition, it must be shown that the jury uninstructed were liable to appropriate such testimony to some other purpose than as affecting the credibility of such witness. Of course, the jury in this case was aware that they were trying defendant for murder. The vocation of the witness was a provable fact. In this connection, she showed or attempted to show that she had reformed. We must accredit the jury with some degree of common sense, and, in our opinion, they were not likely to use or appropriate the testimony for any purpose than as going to the credibility of said witness.

Appellant excepted to the charge of the court on self-defense, because the court, in defining the right of appellant to defend against an assault creating apprehension of death or great bodily injury, contended that "great" has a meaning different from "serious" bodily injury. If this be conceded we do not believe appellant can complain of injury on this account, inasmuch as the court in applying the law to the facts, instructed the jury that appellant could defend against an attack creating apprehension of death, or serious bodily injury.

Appellant contends that the court erred in failing to instruct the jury that appellant had the right to go to the room of deceased on a peaceful mission, inasmuch as appellant testified she went to the room where deceased was in order to collect two dollars from Sonnie Hicks. There was also evidence on the part of the State which tended to show that appellant went to that room expecting to find Sonnie Hicks in bed with Minnie Smith, and to raise a difficulty on that account. Babe Hamilton testified that appellant came to her house that morning just before the difficulty and sat down and called witness to her; said, " 'Babe, do you love Sonnie?' I said, 'Yes I guess I love him; I birthed him.' She said, 'Well, you had better go and get him out of bed with Minnie Smith.' " If the court had charged on this latter phase of the case, there might have been possible error in failing to charge on the phase of the case

presented in appellant's testimony, to the effect that she went to Minnie Smith's room in order to collect a debt; that is, on a peaceful mission. We believe, under the circumstances, that the charge of the court was sufficient on this point. The court instructed the jury that, regardless of the purpose for which appellant may have gone to the room of Minnie Smith, "If deceased made or was about to make an attack on her, which from the manner and character of it and the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased, caused her to have a reasonable expectation or fear of death or serious bodily injury, she killed deceased, to find her not guilty." This, in our judgment, sufficiently presented appellant's defense. Appellant complains that the charge of the court instructed the jury that appellant was authorized to act on attack made or about to be made by deceased; that the evidence showed an actual attack, and not one about to be made. We do not believe, even if it be conceded that there was no testimony tending to show appellant may have acted on an attack about to be made, that this enlargement of appellant's rights could work any injury to her. The evidence is sufficient.

The judgment is affirmed.

*Affirmed.*