### ARTHUR HENDERSON v. THE STATE.

#### No. 299.   Decided March 30, 1910.

**Assault to Murder—Charge of Court—Limiting Impeaching Testimony.**

Where, upon trial for assault to murder, the State introduced impeaching testimony against one of the main defendant's witnesses by which he established his theory of self-defense, and said impeachment was a direct attack on the said witness' testimony and affirmatively showed that the defendant was the attacking party, it was reversible error not to have limited this testimony in the court's charge to purposes of impeachment. Following Paris v. State, 35 Texas Crim. Rep., 82, and other cases.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Tom C. Davis, Bryarly, Carter & Walker,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—There is a bill of exceptions to the failure of the court to limit some impeaching testimony in his charge to the jury. Mrs. Wiggins was a material witness for the appellant. Her testimony substantially shows a case of self-defense on the part of appellant. She says that at the time of the trouble between appellant and Will Blackstock she was standing in the side room door just about two steps in the party room; that she was standing on the side next to the kitchen; that she was standing in the door next to the rear large room about two steps inside of the big room; that the first thing that attracted her attention was that she saw appellant when he came and saw Will Blackstock move towards him and shoot just

about the time they met; that appellant came in at the west or side door, and on entering walked about three steps in the house; that he did nothing that she saw and she was looking at him; that at that time Will Blackstock was standing about three or four steps opposite witness between her and the fireplace; that when appellant came in Blackstock rushed towards him. "Will walked pretty peart towards Arthur." She says that when she says he "rushed" towards Arthur, she means he went pretty fast; that she noticed the position of Blackstock's hands as he went across the house; that he had his right hand up to his side and when he got to where appellant was the shooting occurred; that it occurred at the time they met; that Blackstock went towards appellant; that appellant was not doing anything at the time Blackstock was going towards him. On cross-examination the State laid a predicate to impeach this witness by asking her if she knew Tom J. Brittain. She stated that she did know him; that Tom Brittain was not at the social gathering on the night of the trouble; that she saw him at her father's house shortly afterwards, but did not remember having a conversation with him there in regard to the trouble or as to how it came up; she says that Brittain was not at her father's house talking about it when her sister Bertie was present, and he did not ask witness how it was and she did not make the following statement to him: "I was in the room. Henderson came in staggering and cursing. Will Blackstock went up to him and asked him not to curse in the presence of the ladies and they went on walking towards each other and Arthur struck him twice without making any reply." He, the witness Tom J. Brittain, says that he did not ask her about it at all, but she made the statement to him; that he was not at the party, but had been in the company of Mrs. Wiggins quite a lot, and they were talking about the party at Blackstock's when this statement was made to him. He further states in her conversation with him in regard to the matter that she did not say anything at all about Will Blackstock walking across towards appellant making any threats or his hand on his side like he had a pistol or drawing a pistol. This is a sufficient statement in regard to this particular matter without going further into the evidence.

1. This is the second appeal, the former being found reported in the 55 Texas Crim. Rep., 15. The statement of the case there reported will be sufficient without a further detail of the facts. In this condition of the record in regard to the question of impeachment, it is insisted by appellant that the court was in error in not charging the jury in regard to the effect of the impeaching testimony offered through the witness Brittain. We are of opinion this contention is correct. This witness was a very important one for appellant, and her testimony went strongly to show a case of self-defense. The testimony on the trial was simply contested as to whether Blackstock fired at appellant before appellant cut him with a knife, or whether appellant cut Blackstock with a knife before Blackstock fired. Mrs. Wiggins was an

important witness, as above stated, on appellant's self-defense theory. Her statement to Brittain going before the jury as testified by Brittain was a direct attack on her testimony showing self-defense, and would show appellant the attacking party. If the jury should believe Brittain's statement of her statement to him, then they could find and believe that appellant was in the wrong and made the attack on Blackstock with his knife and put appellant in the attitude of making an aggressive assault with a knife. They could have appropriated this testimony for that purpose and may have given it that effect. Her statement to Brittain was an affirmative statement of an actual attack by appellant before Blackstock had done anything. We, therefore, are of opinion that the court should have limited Brittain's testimony to a matter of impeachment and should have informed the jury that it could only be used for the purpose of weighing the testimony of Mrs. Wiggins and as affecting her credibility. In support of this we cite Paris v. State, 35 Texas Crim. Rep., 82; Dusek v. State, 48 Texas Crim Rep., 519; Martin v. State, 36 Texas Crim. Rep., 125; Dickey v. State, 27 S. W. Rep., 140; Owens v. State, 35 Texas Crim. Rep., 345; Phillips v. State, 35 Texas Crim. Rep., 480; Wilson v. State, 37 Texas Crim. Rep., 373; Bennett v. State, 43 Texas Crim. Rep., 241; Estill v. State, 38 Texas Crim. Rep., 255; Terry v. State, 72 S. W., 382; Guinn v. State, 65 S. W., 376; Branch v. State, 15 Texas Crim. App., 96; Exon v. State, 33 Texas Crim. Rep., 461, 26 S. W., 1088; Finley v. State, 47 S. W., 1015; Vanhouser v. State, 52 Texas Crim. Rep., 572, 108 S. W. Rep., 387; Drake v. State, 25 Texas Crim. App., 293, 7 S. W. Rep., 868.

The misconduct of the jury mentioned in the motion for new trial will not occur upon another trial, and it is, therefore, not discussed.

For the error indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

(McCord, Judge, disqualified.)