### FELIX JONES V. STATE.

#### No. 2299.    Decided March 5, 1913.

**1.—Theft—Impeaching Testimony—Charge of Court.**

Where the testimony of the State was purely impeaching in its character and not admissible as original testimony, or as testimony upon which the conviction could be predicated, it should have been limited in the court's charge, and a failure to do so was reversible error. Following Henderson v. State, 58 Texas Crim. Rep., 581, and other cases.

**2.—Same—Evidence—Impeaching Own Witness—Charge of Court.**

Where a State's witness had failed to identify the defendant except in a very indefinite way, and the State laid a predicate to impeach him and introduced another witness who testified that the first witness had identified the defendant, the court's failure to limit said testimony to purposes of impeachment was reversible error. Following Dusek v. State, 48 Texas Crim. Rep., 519, and other cases.

**3.—Same—Charge of Court—Original Taking—Receiving Stolen Property.**

Where, upon trial of theft, there was evidence that the defendant purchased the alleged stolen property, he could not be guilty as principal, although he may have actually known that the property was stolen, and the court's failure to charge upon the issue of purchase was reversible error.

Appeal from the District Court of Tom Green. Tried below before the Hon. J. W. Timmins.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Oliver* and *Anderson & Dumas,* for appellant.—On question of the court's failure to limit testimony of impeachment: Dusek v. State, 48 Texas Crim. Rep., 519, and cases cited in opinion.

On question of court's failure to limit impeaching testimony: Keath v. State, 50 Texas Crim. Rep., 63, and cases cited in opinions.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted for the theft of diamonds. These diamonds were supposed to have been in the safe belonging to Leffel. The safe was in the house belonging to the alleged owner, and was entered and the safe opened which contained the diamonds. So far as the appearance of the building and safe were concerned there had been no breaking. The theory upon which the State prosecuted the case was that some one who had a key to the house entered it by unlocking, and after going out relocking, the door. It is also the contention of the State that whoever entered the safe had the combination to the safe, and after entering it, relocked it. This is a case of circumstantial evidence. It was necessary in the case, as thought by the State, and perhaps correctly, to show that whoever entered the house and the safe did it as above indicated. Of course, it then became necessary in order to convict appellant that he must enter both the house and the safe, or was a principal to the transaction, otherwise he could not be guilty of the theft of the diamonds. The main reliance of the State was the real or supposed possession by appellant of the diamonds. Appellant had a couple of diamonds that were sought to be identified as those that came out of the safe. There was another diamond a little peculiar in that it was yellow and had a flaw or crack in it. It was sought to connect defendant with the possession and sale of this diamond. There is no evidence, or if any at all so very slight it amounts to nothing, that appellant had a key to the house or combination to the lock of the

safe. Appellant placed the witness Newman on the stand as a witness. Upon cross-examination of this witness the State laid the predicate for impeachment by asking him, in substance, if he did not upon a certain occasion lend appellant a pair of pants in which was a piece of paper containing the number of the combination to the safe from which the diamonds were taken. He admitted lending appellant the pants because those of appellant had been torn, the pants to be used by appellant until his could be repaired, but he denied that there was any paper in the pants on which was written a combination to the safe. The State then, to contradict the witness Newman, introduced some witnesses, who testified that appellant had made the statement to them that the paper with the combination on it was in the pants at the time he, Newman, loaned the pants to appellant. Being purely impeaching and not admissible as original testimony, or as testimony upon which the conviction could be predicated, it should have been limited in the charge, and this by all the authorities. The court did not so limit the evidence, and appellant reserved his exception both by a bill and in motion for new trial. This was a most damaging fact and could be used by the jury, and doubtless was so used as evidence of the fact that the paper was in the pants of Newman when worn by appellant. If the paper was in the pants worn by appellant, and appellant obtained the paper with the combination to the safe on it, it would have been a very strong circumstance in the case, indicating that appellant may have entered the safe. The witness Newman, it seems, also had a key to the house; that he was one of the employes. The exception of appellant to the failure of the court to charge this was well taken, and the court committed error of a reversible nature in not instructing the jury in regard to this phase of the case. See Branch's Criminal Law, sec. 873. Mr. Branch states the rule tersely in the following language: ''Proof of contradictory statements offered by the State to impeach a witness, where the same could be used by the jury to establish any fact in the case other than as affecting the credibility of the witness, should be limited in the charge,'' citing a great number of authorities. One of the latest cases decided by this court upon this proposition is Henderson v. State, 58 Texas Crim. Rep., 581. See Branch v. State, 15 Texas Crim. App., 102; Rogers v. State, 26 Texas Crim. App., 431; Drake v. State, 25 Texas Crim. App., 293; Washington v. State, 17 Texas Crim. App., 204; Foster v. State, 28 Texas Crim. App., 50; Keith v. State, 50 Texas Crim. Rep., 63; Vanhouser v. State, 52 Texas Crim. Rep., 572; Benjamin v. State, 57 Texas Crim. Rep., 291; Rowan v. State, 57 Texas Crim. Rep., 625; Paris v. State, 35 Texas Crim. Rep., 82; Dusek v. State, 48 Texas Crim. Rep. 519; Martin v. State, 36 Texas Crim. Rep., 125. These are a sufficient number of cases to cite without going further into the list. There are a great number of additional cases not here cited. Mr. Branch has collated many of these in his excellent work on Criminal Law.

The witness Goodman was used by the State. On his failure to identify appellant on the trial with any degree of definiteness, the State laid a predicate to impeach him, although he was the State's witness. McNamara was placed on the stand to testify and did, to matters denied by the witness Goodman in the predicate laid or sought to be laid to certain things which were contradictory of Goodman's answers to the original question put by the State. Among other things, the witness McNamara testified: "I was present when Mr. Goodman went to Felix Jones to identify him. I went after Mr. Goodman. Yes, Goodman said something to Jones. Goodman and I walked to the justice court room and asked him to identify the man with whom he made the trade a few days before. The justice of the peace, Mr. Jones and his lawyer and another man were there. Goodman looked them over and said Jones was the man, and he asked him what he had done with his watch and money. No, sir, he did not point out and identify Jones' lawyer as the man." He further testified: "I asked Goodman if the man was in there and he said yes, and looked at Jones and said what did you do with my money and watch; he address this to Jones. I was standing in the door of the office and Goodman was on the inside. Yes, sir, I had arrested Jones. That was in July, 1910.". Further explanatory of this it will be necessary to state that Goodman had bought a diamond supposed to be the yellow diamond with a flaw in it that was claimed by Leffel as one of the stolen jewels. The man who sold the diamond to Goodman signed a bill of sale to it under the name of Dick Brooks. Goodman gave in exchange for the diamond a watch and some money. Without going further into details we think this is enough of the evidence to show sufficiently the conditions surrounding the impeachment of Goodman by McNamara. This was very important testimony if it could have been introduced as original evidence. Goodman had failed to identify appellant except in a very indefinite way. McNamara's testimony was to the effect that Goodman had identified him in Waco when he was arrested and he was then before the examining court or magistrate. If Goodman had recognized Jones upon the witness stand in this case as being the man who sold him the diamond, it would place the case in a very different light before the jury from what his testimony actually given placed appellant. He failed to do it and left the matter, to say the least of it, in a doubtful condition, if not more than in a doubtful condition. McNamara's statement as to what Goodman did and his identification of it put a very different light upon this phase of the case before the jury. If this could have been used as original evidence in identifying the defendant, the State's case would have been wonderfully strengthened. Not being admissible as original testimony, it could only be used to impeach Goodman, and under the facts of this case only upon the theory that the State was surprised at Goodman's testimony. Exception was reserved to the court's failure to limit this evidence. This was error. Again referring

to Mr. Branch's work on Criminal Law, sec. 873, he thus tersely states the rule: "If the State impeaches her own witness by proof of contradictory statements, and the same could be used by the jury to establish any fact in the case other than the credibility of the witness, such proof should be limited in the charge." He cites quite a number of cases in support of this proposition, coming down to and including Finley v. State, 47 S. W. Rep., 1015, and Sapp. v. State, 77 S. W. Rep., 457. To the same effect might be cited a great number of cases, among them: Dusek v. State, 48 Texas Crim. Rep., 519; Drake v. State, 25 Texas Crim. App., 293; Foster v. State, 28 Texas Crim. App., 50; Exon v. State, 33 Texas Crim. Rep., 461; Paris v. State, 35 Texas Crim. Rep., 82; Wilson v. State, 37 Texas Crim. Rep., 373; Winfrey v. State, 41 Texas Crim. Rep., 538; Wooley v. State, S. W. Rep., 1051; Keith v. State, 50 Texas Crim. Rep., 63; Vanhouser v. State, 52 Texas Crim. Rep., 572. It is useless, however, to multiply the cases. It is the unbroken rule in Texas. The charge was in this respect fatally erroneous. It is necessary to reverse this judgment on both of the propositions above stated.

There is another question we might mention in a general way. The testimony in the case is circumstantial, and of not very strong probative force. The court submitted the case upon the theory that there were three stolen diamonds, and instructed the jury that if appellant fraudulently took the diamonds or either of them described in the indictment, and that the diamond or diamonds was the property of Leffel, etc., they would convict. In this connection the court also charged the jury as follows: "You are further instructed that if the defendant purchased the two diamonds delivered to Scott (if they were delivered to him) from one Dooley then you will not consider said two diamonds in passing upon the guilt of defendant." The third diamond relied upon by the State was the yellow diamond with a flaw in its discussed in the second paragraph of this opinion. Appellant asked a special instruction to the effect that if the jury should find that defendant bought the diamonds claimed to have been sold by Scott to the witness Fred, which was an unmounted diamond, then they should acquit. The court's charge is not sufficient, nor do we believe that the special charge asked by appellant presents appropriately the question. Exceptions were reserved, however, to all these matters, not only as to these charges, but that the court was wrong in submitting the matter. We would suggest upon another trial, that if appellant bought two of the diamonds, that the court should instruct the jury that so far as they are concerned the appellant should be acquitted, or if they had a reasonable doubt of the purchase of those diamonds he should be acquitted. In other words, appellant could not be convicted unless he was a principal in the transaction of the theft, and if he purchased either or all of the diamonds after their theft, he could not be guilty as a principal, although he may have actually known they were stolen. Under the evidence in the case the law

should be so given that appellant should not be convicted of the theft of any of the diamonds unless he was shown to have been guilty of the theft of that diamond. Not only should the theory of purchase be given in charge to the jury upon another trial, but reasonable doubt should be given in the same connection. The case is one, to say the least of it, based upon very weak evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*