## SMITH v. STATE.

(Court of Criminal Appeals of Texas. Oct. 11, 1911. Rehearing Denied Nov. 29, 1911.)

1. COURTS (§ 63*)—TERMS OF COURT—STATUTES—CONSTITUTIONAL LAW.

By Act Feb. 3, 1909 (Acts 1909, c. 8), the time of holding the district court of the Thirty-Second district in M. county was fixed as the fifteenth Monday after the first Monday in February and September, changing the time fixed by Act April 12, 1905 (Acts 1905, c. 78), providing that terms should be held on the seventeenth Monday after the first Monday in February and September. Held, that a term of court was properly convened in M. county on May 23, and adjourned June 25, 1910, under the old law, since to have done otherwise would have deprived the county of two terms of court per year required by the Constitution.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 63.*]

2. NAMES (§ 16*)—IDEM SONANS.

Where accused was charged with committing rape on one "Maple" Norred, evidence that the crime was committed on "Mable" Norred was properly received; the names "Maple" and "Mable" being idem sonans.

[Ed. Note.—For other cases, see Names, Dec. Dig. § 16.*]

3. CRIMINAL LAW (§ 1091*)—APPEAL—BILL OF EXCEPTIONS.

Where, in a prosecution for rape, defendant objected to the testimony of a certain physician as to the examination of the prosecutrix, because the examination was too remote, a bill of exceptions, which failed to state when the examination was had, did not show error.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1091.*]

4. CRIMINAL LAW (§ 1091*)—EXCLUSION OF EVIDENCE—BILL OF EXCEPTIONS.

A bill of exceptions to the exclusion of a witness' opinion as to prosecutrix's age was insufficient, where it did not state the proof on

the subject, so as to show whether or not, under any contingency, the witness' best judgment could have been given.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1091.*]

5. CRIMINAL LAW (§ 1091*)—APPEAL—BILL OF EXCEPTIONS—EVIDENCE.

In a prosecution for rape, a bill of exceptions to the exclusion of the contents of a letter offered on the issue of prosecutrix's age *held* insufficient.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1091.*]

6. CRIMINAL LAW (§ 1091*)—APPEAL—BILL OF EXCEPTIONS—EXCLUSION OF EVIDENCE.

A bill of exceptions to the exclusion of evidence is insufficient, where it fails to state what the witness would have testified, or to show the state of the proof, so as to make the answer admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2816; Dec. Dig. § 1091.*]

7. CRIMINAL LAW (§ 875*)—TRIAL—VERDICT—MISSPELLING.

A verdict, "We the jury find the defendant gelty and assess his punashment at ten years in the state penitentiary," was sufficient, notwithstanding the misspelling, to sustain a judgment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2089; Dec. Dig. § 875.*]

8. RAPE (§ 52*)—EVIDENCE.

Evidence *held* to sustain a conviction of rape on a female under 15 years of age.

[Ed. Note.—For other cases, see Rape, Dec. Dig. § 52.*]

Appeal from District Court, Mitchell County; James L. Shepherd, Judge.

N. T. Smith was convicted of rape, and he appeals. Affirmed.

J. L. Goodman, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, J. The appellant was indicted on January 17, 1910, for rape upon a girl under 15 years of age alleged to have occurred on April 25, 1909, was tried June 14, 1910, convicted, and his punishment fixed at 10 years in the penitentiary.

[1] The appellant made a motion to quash the indictment because the same was returned at a time and at a term of the court not provided for by law. By the act of February 3, 1909, the time of holding district court in the Thirty-Second district in Mitchell county was fixed to be on the fifteenth Monday after the first Monday in February and September, and may continue in session five weeks, changing the act of April 12, 1905, which fixed the time of court in said county on the seventeenth Monday after the first Monday in February and September. The term at which this indictment was found convened on May 23, and adjourned on June 25, 1910. The court overruled the motion to quash. It seems this exact question on this exact statute has already been held by this court adversely to appellant's contention. Nobles v. State, 57 Tex. Cr. R. 307, 123 S. W. 126. See, also, Wilson v. State, 37 Tex. Cr. R.. 373,

35 S. W. 390, 38 S. W. 624, 39 S. W. 373; Ex parte Murphy, 27 Tex. App. 492, 11 S. W. 487; Graves v. State, 6 Tex. App. 228; Womack v. Womack, 17 Tex. 1; Prescott v. Linney, 75 Tex. 615, 12 S. W. 1128.

[2] Appellant's bill of exceptions 1½ complains that while the witness Mable Norred was on the stand, and after having testified to her age, was asked this question by the state: "Q. Now, Mable, state to the jury, so they can hear you, whether or not this defendant had carnal knowledge of you on or about the 25th of April, 1909?" The appellant objected to this for the reason that the spelling was "Maple" Norred, and not "Mable" Norred, and that the witness stated that her name was "Mable," and "we object to her testifying, for we have no notice that we are charged with this crime as against her. Her name is Mable, but the indictment charged us with M-a-p-l-e, and we object because we have had no notice of being charged with this offense against Maple Norred," and because it is not idem sonans. The court overruled the objection and permitted the answer, to which question she then stated about the appellant having carnal intercourse with her. The court in allowing the bill states that "Maple" Norred and "Mable" Norred are idem sonans. In our opinion the names "Maple" and "Mable" are idem sonans, and the court did not err in permitting the witness to testify. Salinas v. State, 39 Tex. Cr. R. 319, 45 S. W. 900; Dickson v. State, 34 Tex. Cr. R. 1, 28 S. W. 815, 30 S. W. 807, 53 Am. St. Rep. 694; Dawson v. State, 33 Tex. 491; Henry v. State, 7 Tex. App. 388.

[3] Bill No. 2 complains that the court erred in permitting Drs. Coleman and Phenix, "while on the stand and after having stated that he had been a practicing physician for 36 years and had occasion to make a physical examination of Mable Norred at the residence of Mr. Fulkerson," was asked the result of his findings, to which question the defendant objected for the reason that it was too remote and too far off; that it would be two years next August since the first copulation, and it was too remote and could not be corroborated by this testimony. The court overruled the objection, and the witness answered: "A. Well, as I understand, we were sent there for the purpose of ascertaining certain facts, and we made a very careful examination of this girl, and reached the conclusion that she was sufficiently developed, perhaps a little more than a girl of her age ordinarily would be, to have had intercourse with a man without any very great difficulty. There was a very little rupture." The court in allowing the bill qualified it with this explanation: "The testimony tends to show that the girl was prematurely developed, and that the parts were of sufficient size to admit the male

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

organ of an ordinary man without pain, and to throw light upon the matter, and the condition of the hymen as to being ruptured, and that the rupture was of sufficient size to then take the organ of a man of ordinary size (Phenix testimony, Trans. p. 64), with the uncontradicted testimony of prosecutrix that no other man but defendant had ever 'done it to her.'" It will be seen by this that neither the bill nor the qualification thereof by the court states when the examination was made of the girl alleged to have been ravished. Neither does the testimony of Phenix, on page 24, called attention to by the court in his qualification, anywhere fix the date. The bill is therefore so defective as that we cannot pass upon it so as to determine whether there was any error or not. Besides, the objection would go more to the weight than to the admissibility of the evidence.

[4] Appellant's bill of exceptions No. 3 complains that while the witness Duhlaney was on the stand, and after having testified that he did not know how old Mable Norred was, but that he thought she was a couple of years older than his girl, and that his girl was 14 years old, he was asked what would be his best judgment as to the age of Mable Norred judging from the age of his little girl. Upon the objection by the state to this testimony because it was a pure conclusion on the part of the witness, the court sustained it, and the appellant excepted. The court in allowing the bill states, "with the qualification that Duhlaney was allowed to testify to all facts, except what was his best judgment as to Mable Norred's age. If Duhlaney's statements were taken, Mable Norred, under such statements, could not have been on April 25, 1909, 15 years of age." This bill is wholly insufficient, in that it does not state what the proof was on the subject so as to show whether or not under any contingency this witness' best judgment could have been given, nor does the bill state what his testimony would have been. There is no error shown by this bill.

The next bill, No. 4, complains that while the witness Phena Smith was on the stand, and after having testified that she had received a letter about May or June of 1909, from Mrs. N. T. Smith, mother of Mable Norred, but that she had failed to find the original letter, and in this letter the age of Mable Norred was given, she was asked what the letter contained as to the age of Mable Norred, whereupon counsel for the state objected as hearsay, and the court sustained the objection. The appellant excepted, and the court qualified the bill by stating "that no sufficient predicate established to show the contents of letter; letter was hearsay. No identity shown, never knew or had seen Mrs. Mattie Smith, nor is any particular times stated, whatever time it might be."

[5] The next bill complains that while the witness Lizzie Smith was on the stand, and after stating that she had received a letter from Mable Norred about May or June, 1909, in which she detailed her age, which said letter so referred to was read in the presence of Warren Smith, Morgan Smith, Francis Cheatham, and Mrs. Phena Smith, she was asked to give the age which the said Mable Norred detailed in the said letter; whereupon counsel for the state objected, because it was hearsay, and the court sustained the objection. The defendant then and there excepted and offered to prove by the other persons named as having heard the letter read that "it was stated in said letter that she (Mable Norred) was 16 years of age." The same was undertaken to be proved by Lizzie Smith. The court expressly refused to approve this bill because it did not state what occurred. The court, thereupon, instead of approving the purported bill, just above recited, prepared and allowed a bill himself, in which he stated "that the state's counsel, when the bill was presented to him, objected thereto, because it was not stated in said letter that Mable Norred was then 16 years of age, and this was not offered to be proved on the trial by appellant's counsel, and that the court, knowing that said objection by the state was true, and, after having had the official stenographer's record read to him, pointed out to appellant's counsel that he would approve the bill if that clause was omitted." Counsel for appellant refusing this, he then prepared this bill in lieu of what is recited above and stated in the bill that while the witness Lizzie Smith was on the stand, and after having stated that she had received a letter from Mable Norred about May or June, 1909, in which she detailed her age, and that said letter so referred to was read in the presence of Warren Smith, Morgan Smith, Francis Cheatham, and Phena Smith, she was asked to give the age which the said Mable Norred detailed in the above letter. And, upon objection by the state that it was hearsay, the court sustained the objection, to which the defendant excepted, and the defendant offered to prove by the parties named, who heard the letter read, the same as was undertaken to be proven by Lizzie Smith. The court further qualified the bill by stating "that the letter was not produced in court, neither was it identified, no time stated when the letter was written, no proper predicate laid for the introduction of the alleged lost letter, and writing of Mable Norred was not identified, nor was it stated that Mable Norred's name was signed to it, the witness never saw Mable Norred before, or knew her handwriting or had seen her write." The bill as prepared and allowed by the court and as qualified by him is clearly insufficient, and the court is not shown to have committed any error in excluding said testimony.

[6] Appellant's next bill is that while Bessie Fulkerson was on the stand, and after having testified that she had married a

brother of Jim Fulkerson, and after having testified that she had known Mable Norred about four years, and had heard the mother of Mable Norred state her age, but did not remember what Mable's mother said, counsel for appellant asked what her mother had told her of the age of Mable Norred. The state objected, and the court sustained the objection, to which defendant excepted. The court, in allowing the bill, qualified it by stating: "That Bessie Fulkerson states specifically that she did not know what the age of Mable was; hence there was nothing for her to state." This bill is wholly insufficient, in that it does not state what the witness would have testified, nor does it give this court any information as to what the state of the proof was so as to make the answer to the question, whatever it may have been, admissible.

[7] Another complaint is that the verdict is unintelligible and without meaning, and that it is not such as required by law and one upon which a proper judgment can be rendered. The verdict is as follows: "We the jury find the defendant gelty and assess his punashment at ten years in the state penitentiary." The proper judgment on this verdict was rendered by the court adjudging the defendant guilty and reciting therein that the word "punishment" was misspelled, and the court asked the foreman to correct the spelling, which was done, and thereafter the court had each juror to rise, and asked each if that was his verdict, to which they responded that it was, and then the court asked the jury collectively if that was their verdict, to which they replied, "It is," and the judgment then adjudges the defendant guilty and directs his confinement for 10 years in the penitentiary. This verdict was amply sufficient, as verdicts much less informal than this have repeatedly and uniformly been held by this court to be sufficient.

[8] The only other question in this case is the contention by appellant in his motion for new trial that the evidence is insufficient to sustain the verdict. We have time and again gone over and considered this evidence, and, while there are contradictions of the various witnesses who testified, the testimony as a whole is amply sufficient to sustain this verdict. We do not propose to state the evidence in full, but simply to state what it clearly justified the jury to believe. The girl, Mable Norred, whom the indictment charged the appellant with ravishing on April 25, 1909, was shown to be 14 years of age July 30, 1909, and not 15 years of age at the time the case was tried in June, 1910. The girl Mable was the stepdaughter of appellant. The girl's mother married appellant several years before her death, which occurred in November or December, 1909. Her mother for some considerable time before her death was shown to have been a frail, delicate woman, suffering, and finally died, of tuberculosis. The girl's private parts were shown to have been unusually developed and to have been in·such a condition that the appellant could have had intercourse with her, as she testified he had repeatedly had; that the acts of intercourse usually occurred when her mother was either away from home or at such place and condition as .that· she could not have seen or known of it. The appellant was also shown to have been a man of no means and moving about.from place to place from time to .time, and that when his wife died her relatives took this girl with others of the children to raise and support them; that this girl was living with her aunt, Mrs. Fulkerson, at Colorado City, Mitchell county, after the death of her mother; that the appellant lived in a county distant from that, and some months after her mother died the said girl and her aunt's family got information that the appellant intended to take his stepchildren and keep house with them himself; that thereupon this girl, who had not told of his acts towards her prior thereto, became alarmed and then protested to her aunt and her uncle that she did not want to go with her stepfather and would not do so unless compelled to do so, because of his acts of intercourse with her, and that she believed that it was his purpose to take her with the other children so that he could continue his acts of intercourse with her. The appellant appeared in Colorado City at this time and went to the house of Mr. Fulkerson, where the girl was staying, and was met at the front gate by her uncle and refused admission to the house. He was then charged by her uncle with raping this child and was told, in effect, what the child had told her aunt, his wife, thereabout. The appellant did not deny or dispute it, but merely hung his head when so charged. The repeated acts of sexual intercourse by the appellant with the child were detailed by her, but we think it unnecessary to recite them here. Suffice it to say that the testimony as stated above, if believed by the jury and the court below, which was evidently done, was amply sufficient to sustain the verdict, and in our opinion we have no legal authority to reverse this case on that account.

The judgment will therefore be in all things affirmed.

DAVIDSON, P. J., absent.